WALTER J. ROTHSCHILD, Judge.
12PIaintiff, Ruth Mora Avila, appeals the trial court’s judgment in favor of defendant, sanofi-aventis U.S. LLC,[1] dismissing Ms. Avila’s claims with prejudice. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY

Ruth Avila was formerly employed by sanofi-aventis as an Oncology Sales Professional. In October of 2009, sanofi-aventis terminated Ms. Avila’s employment on the grounds that she had violated various company policies. On August 2, 2010, Ms. Avila brought summary proceedings against sanofi-aventis, asserting a claim under the Louisiana Wage Payment Act, LSA-R.S. 23:631, et seg., for wages remaining unpaid after termination of her employment. Specifically, Ms. Avila contends that she was awarded a bonus based on her performance for 2008 and she was only paid one-third of the bonus prior to her [stermination. She claims that she is entitled to the remaining two-thirds, sa-nofi-aventis responds that she is not entitled to the remaining two-thirds of the bonus, because the bonus was conditioned on employment with the company and acceptable performance at the times when the second and third installments were to be paid, and Ms. Avila’s employment was terminated for just cause prior to the second and third installments.
Trial of this matter was held on February 8, 2011. At trial, Ms. Avila testified that she worked for sanofi-aventis from 2004 to 2009, and that her compensation consisted of a salary along with a bonus structure. She testified that she qualified and earned a deferred bonus of $40,000.00, pursuant to sanofi-aventis’ Oncology Deferred Annual Bonus Program (“ODABP”), as a result of her work performance in 2008. The bonus was to be paid to her in 2009, 2010, and 2011 in three installments. In June 2009, Ms. Avila received the first installment of $13,333.33, but sanofi-aventis refused to pay the remaining two-thirds of the bonus when her employment was terminated in October of 2009.
On cross-examination, Ms. Avila acknowledged that the PhRMA Code Guidelines provide instructions on how a sales representative in the pharmaceutical industry is to perform her job, and these guidelines changed on January 1, 2009. The company guidelines also changed to comply with the PhRMA Code Guidelines. Ms. Avila admitted that she received training on these policy changes. Ms. Avila was questioned about some of her actions that sanofi-aventis claims were violations of company policy and the PhRMA Code Guidelines, and were the reasons for her termination from employment.
Ms. Avila admitted taking a Dr. Hamilton and a registered nurse, Barbara Sloan, out to dinner in September 2009, which sanofi-aventis asserts was a violation of the company’s “Meals and Prohibition of Entertainment Policy.” Ms. 14Avila testified that she did not believe that taking these people to dinner was a violation, because the dinner was paid for with a gift certificate issued by the restaurant in August 2009. According to Ms. Avila, the company paid for a Speaker Program at the restaurant in August 2009, but not enough people attended to satisfy the amount paid by sanofi-aventis. The restaurant issued a gift certificate for the remaining balance, *1134 which was used to pay for the dinner with Dr. Hamilton and Barbara Sloan. Ms. Avila admitted that neither Dr. Hamilton nor Barbara Sloan attended the Speaker Program in August 2009, but she did not believe that she violated company policy or PhRMA Code guidelines, as claimed by sanofi-aventis.
Ms. Avila also testified that she used her sanofi-aventis credit card to pay for pizza to be delivered to the office of two physicians in June 2009, even though she was not present at the office to conduct a “lunch and learn” as she recorded in the company’s records. She admitted that this “apparently” violated company policy.
John Hamm, who is a district sales manager and was Ms. Avila’s supervisor, testified that Ms. Avila received training on sanofi-aventis’ policies and procedures designed to insure compliance with the PhRMA Code Guidelines. He stated that he informed Ms. Avila that her employment was being terminated and explained the reasons for the termination, but she did not contest or deny the allegations. Mr. Hamm admitted that he did not have any personal knowledge of any of the allegations against Ms. Avila.
Mr. Hamm further testified that he notified Ms. Avila of her ODABP award for 2008. He explained the letter sent to Ms. Avila and noted that the document provides that the awards partially vest and are paid over a three-year vesting period, assuming continued employment and acceptable performance throughout the vesting period.
| fiFinally, Jeanette Fontanes testified that she is the employee relations manager for sanofi-aventis. One of her job duties is to investigate employee misconduct. Ms. Fontanes testified that she spoke with Ms. Avila regarding the allegations against her, reviewed records, met with witnesses, and prepared a “Summary of Allegations or Findings Report.” She testified that there were seven allegations against Ms. Avila, and four of the allegations were substantiated through her own admission. She stated that when she spoke with Ms. Avila, Ms. Avila confirmed four of the allegations and explained her conduct. Ms. Fontanes testified that she shared the findings of her investigation with the company’s discipline committee, which decided that three violations admitted by Ms. Avila were terminable offenses. She testified that the bonus program did not influence her investigation findings in any way.
At the conclusion of trial, the trial judge gave the parties additional time to submit memoranda on the law pertaining to the issues in this case. Thereafter, he took the matter under advisement. On April 5, 2011, the trial judge rendered a judgment in favor of sanofi-aventis, dismissing Ms. Avila’s claims with prejudice. Ms. Avila appeals.

LAW AN DISCUSSION

In her first assignment of error, Ms. Avila contends that the trial court erred by rendering a verdict for sanofi-aventis which fails to afford her the protections of the Louisiana Wage Payment Act, LSA-R.S. 23:631 et seq. She asserts that the bonus she earned in 2008 was part of an incentive plan to award compensation for performance. She claims that although payment of the bonus was deferred, the bonus was earned in 2008 and owed as wages under LSA-R.S. 23:631. Ms. Avila asserts that company policy providing for forfeiture of an earned bonus if employment is terminated is a violation of LSA-R.S. 23:634.
| (jSanofi-aventis responds that the ODABP provided eligible employees the opportunity to receive bonus payments but did not guarantee payments. It notes that the June 8, 2009 letter to Ms. Avila regarding the ODABP award specifically provides that the awards partially vest and *1135 are paid out over a three-year period, assuming continued employment and acceptable performance throughout the vesting period. It points out that the Eligibility Criteria for the ODABP provides that the employee must be employed on the date of each installment in order to receive payment and must be in good standing during the vesting period, sanofi-aventis further asserts that Ms. Avila received training on the PhRMA Code Guidelines and company policies, yet she still committed at least three violations of the company guidelines which caused her termination. Finally, it contends that the ODABP’s deferred vesting provisions are valid and enforceable because Ms. Avila was terminated for cause.
The Eligibility Criteria for the 2008 ODABP provides that if the company achieves its sales objectives, up to the top 20% of Oncology Sales Professionals will be eligible to receive an ODABP award for that assessment period. It further provides, in pertinent part, that to qualify to receive an ODABP in a given year, the top performer must also:
• Be employed at the date of payment of each installment to be eligible to receive the payment
• Be in good standing (not on a Final Written Plan or have received a Notice of Violation or an Annual Performance Rating of less than Meets Expectations) during vesting period up through date of the installment payment. Any such occurrence voids all outstanding ODABP Award Payments
• Not be eligible to receive any other long-term incentive plan, e.g. Stock Options, etc.
The June 8, 2009 letter to Ms. Avila about the 2008 ODABP award provides 17that the $40,000 award would be paid in three installments of $13,333.33, and these installments would be paid in 2009, 2010, and 2011. The letter further provides that the 2008 ODABP awards “partially vest and are paid out over a three-year vesting period assuming continued employment and acceptable performance throughout the vesting period.”
Clearly, under the eligibility criteria for the ODABP and the terms set forth in the June 8, 2009 letter, Ms. Avila was not entitled to the remaining two-thirds of the bonus, because she was not employed by sanofi-aventis at the time of the scheduled second and third payments, and she did not remain in good standing throughout the vesting period. Accordingly, we must consider whether these provisions of sano-fi-aventis’ policy comply with the law.
LSA-R.S. 23:631(l)(a) provides:
Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first. (Emphasis added.)
LSA-R.S. 23:634(A) provides:
No person, acting either for himself or as agent or otherwise, shall require any of his employees to sign contracts by which the employees shall forfeit their wages if discharged before the contract is completed or if the employees resign their employment before the contract is completed; but in all such cases the employees shall be entitled to the wages actually earned up to the time of their discharge or resignation. (Emphasis added.)
LSA-R.S. 23:635 provides:
No person, acting either for himself or as agent or otherwise, shall assess any fines against his employees or deduct *1136 any sum as fines from their wages. This Section shall not apply in cases where the employees willfully or negligently damage or break goods or works, or in cases where the employees willfully or negligently damage or break the property of the employer, or in cases where the employee is convicted or has pled guilty to the crime of theft of employer funds, | sbut in such cases the fines shall not exceed the actual damage done.
Ms. Avila claims that sanofi-aventis has violated each of the foregoing statutory provisions by failing to pay her the remaining two installments of her $40,000 bonus. We disagree.
First, the second and third installments of the $40,000 bonus were not “an amount then due under the terms of employment,” pursuant to LSA-R.S. 23:631, at the time of Ms. Avila’s termination from employment. At the time of her termination, the remainder of the bonus was not to be paid until a later date and only if the terms of eligibility were met. The June 8, 2009 letter specifically indicates that the awards “partially vest and are paid out over a three-year vesting period.” Further, the award was not yet “actually earned” under LSA-R.S. 23:634, because all of the provisions of the eligibility criteria were met not at the time of her termination. Finally, we do not find that the failure to pay the remaining two-thirds of the bonus was a prohibited fine under the provisions of LSA-R.S. 23:635.
Ms. Avila cites several cases in support of her position. She cites Beard v. Summit Institute of Pulmonary Medicine and Rehabilitation, Inc., 97-1784 (La.3/4/98), 707 So.2d 1233, in which the Louisiana Supreme Court held that an employee who walked off the job was entitled to compensation for accrued vacation time, which constituted “wages” under company policy, notwithstanding the employer’s policy that an employee forfeits all accrued benefits when she walks off the job. The Court stated that accrued vacation time is an “amount then due under terms of employment” and constitutes wages under LSA-R.S. 23:631. Id. at 1235. However, the Beard case is distinguishable from the instant case. In the present case, Ms. Avila did not walk off the job but was terminated for cause.[2] |sFurther, the benefits in Beard were “vested and accrued” when the employee left her job, whereas in the present case, the bonus payments were only partially vested when Ms. Avila was terminated and there was a three-year vesting period requiring continued employment and acceptable performance during that period.
Ms. Avila also cites Kearney v. Lee Medical International, Inc., 06-597 (La.App. 5 Cir. 1/16/07), 951 So.2d 417, writ denied, 07-344 (La.3/30/07), 953 So.2d 70. In that case, Mr. Kearney was paid a $5,000 bonus that the employer required to be repaid to the company if the employee did not remain employed for two years after the payment. Kearney, 06-597 at 4, 951 So.2d at 419. Thereafter, Mr. Kearney was involuntarily terminated which prevented him from fulfilling his obligation to remain with the company for two years, and the company withheld the amount of this bonus from his final paycheck. This Court found that the bonus fell within the ambit of LSA-R.S. 23:631, et seq., and was “wages” subject to the provisions of the Louisiana Wage Payment Act. Id. at 6, 951 So.2d at 420. This Court upheld the trial court’s judgment awarding Mr. Kear-ney the $5,000 in bonus wages, finding that *1137 the repayment condition only applied if the plaintiff left the defendant’s employ voluntarily. Kearney, 06-597 at 5, 951 So.2d at 420.
The present case is distinguishable from Kearney, because the agreement in that case provided that the bonus was not related to job performance, the bonus was already paid to the employee in full, and the employer attempted to receive repayment of a bonus already paid by reducing the employee’s paycheck. In the instant case, Ms. Avila’s bonus was related to job performance, only partially paid, and only partially vested at the time of her termination.
Although Ms. Avila cites several additional cases in support of her position, we have reviewed each of these cases and find that they are all distinguishable on their facts and unpersuasive.
| mThe record before us shows that Ms. Avila was discharged from her employment for just cause. Further, the ODABP bonus awards only partially vested during Ms. Avila’s employment and would be paid over a three-year vesting period if continued employment and acceptable performance requirements were met. Thus, although top work performance in 2008 was the primary reason for the bonus, there were additional conditions and qualifications that had to be met. Ms. Avila did not meet the required qualifications for eligibility at the time of her termination, including continued employment and good standing.
Considering the facts, the entire record, and applying the pertinent law, we find that sanofi-aventis’ requirements for receiving bonus payments were not in violation of the Louisiana Wage Payment Act and that Ms. Avila was not entitled to the remaining two-thirds of the $40,000 bonus. Accordingly, the trial judge did not err by ruling in favor of sanofi-aventis and dismissing Ms. Avila’s claims.
In Ms. Avila’s remaining assignments of error, she contends that the trial judge erred in failing to award her attorney fees, penalty wages, and costs. However, considering our finding that the bonus payments claimed by Ms. Avila were not owed to Ms. Avila upon her termination, we find these arguments to be without merit.

DECREE

For the foregoing reasons, we affirm the April 5, 2011 judgment of the trial court in favor of sanofi-aventis and dismissing Ms. Avila’s claims.

AFFIRMED

. According to the parties and the record, defendant does not capitalize its name.

. Ms. Avila contends that sanofi-aventis failed to prove that it had cause to terminate her. However, the record supports the finding that Ms. Avila was terminated for violations of company policy, which constituted just cause for her termination.