EDWIN A. LOMBARD, Judge.
hThe Appellant, Lycée Frangais de La Nouvelle-Orléans, Inc., seeks review of the August 27, 2013 judgment of the district court granting past wages to Appellee, Darleen Mipro. Finding that the decision of the district court is not manifestly erroneous, we affirm.
Darleen Mipro (“Ms. Mipro”)[1] was employed as a teacher by defendant Lycée Frangais de La Nouvelle-Orléans, Inc. (“LFNO”), a charter school. She worked at LFNO from August 1, 2011, through November 30, 2012, when she was terminated. Her annual salary for the 2012-2013 academic year was $51,500.00, which was divided into twenty-six (26) bi-monthly payments of $1,980.77.[2]
She received her final check in the amount of $2,542.07 through correspondence dated December 7, 2012 from the Director of Finance and Operations, Julianne Ruocco, for LFNO. Within the letter, Ms. Ruocco explained that the check included $1,584.56 in wages for the eight out of ten days worked during the last pay period (from November 21, 2012 through December 4, 2012), in addition to $957.51 for accrued unused leave (38.67 hours).
^Subsequently, Ms. Mipro filed suit against LFNO for outstanding wages through a summary proceeding under La. Code Civ. Proc. art. 2592, et. seq. After trial was held on July 2, 2013, the district court ruled in favor of Ms. Mipro, and awarded her $5,942.30, including $1,188.46 in attorney’s fees, as well as court costs in its August 27, 2013 judgment. The district court, however, denied her claims for vacation pay, one weeks’ worth of wages, and penalty wages.
LFNO timely appealed the August 27, 2013 judgment, and raises five (5) assignments of error:
*652 1. The district court erred in finding that LFNO failed to pay Ms. Mipro a “portion of wages” for summer pay earned during her four month tenure from August 13, 2012 to November 30, 2012.
2. he district court erred in finding that Ms. Mipro earned any wages besides that actually worked through date of her termination.
3. The district court erred in finding that Ms. Mipro earned or accrued any “summer pay” after the termination of her employment.
4. The district court erred in assessing LFNO with attorney’s fees and costs. The district court erred in awarding Ms. Mipro future earnings which had not yet accrued.
5. The district court erred by relying on Ms. Mipro’s opinion with regard to how she should be paid rather than relying on the evidence of LFNO’s compensation plan which supported she had been paid all wages due to her.
Though LFNO raises the assignment of error that the district court erred in awarding Ms. Mipro attorney’s fees and costs, this assignment of error was not lobriefed. Consequently, pursuant to the Uniform Rules, Court of Appeal, Rule 2-12.4, we pretermit discussion of this issue.[3]
Moreover, based upon our review of the assignments of error raised as well as the arguments made in support, we find that LFNO actually raises one assignment of error: the district court erred in awarding Ms. Mipro “future” wages to which she was not entitled under the terms of her employment.
LFNO argues that the salaries for all of its teachers, including Ms. Mipro, are divided over 26 pay periods and twelve months. For the 2012-2013 school year, Ms. Mipro’s annual salary was $51,500, which resulted in her earning $1,980.77 biweekly or $198.08 per day. Additionally, LFNO argues Ms. Mipro only worked eight (8) days in the last pay period between November 21, 2012 and December 4, 2012. Thus, upon her termination she was paid $1,584.64, i.e., 8 [days] X $198.08.
LFNO avers that Ms. Mipro seeks “future” wages for the 2013 summer based upon the rationale that she is owed the difference between LFNO’s twelve-month payment schedule and what she would have been paid under a ten-month payment schedule. Ms. Mipro, LFNO asserts, is barred from recovering payment for work she did not perform in the summer of 2013, especially since these payments had not accrued at the time of her termination. Furthermore, LFNO maintains that Ms. Mipro’s beliefs as to how she should be paid are unsupported by any legal authority.
Additionally, LFNO maintains that under Ms. Mipro’s employment contract with LFNO, dated May 27, 2012, her employment was at-will; thus, she could be | germinated at any time.[4] In an at-will work relationship, LFNO contends, future liability for wages is nonexistent, citing *653 Newsom v. Global Data Systems, Inc., 12-413 (La.App. 3 Cir.12/12/12), 107 So.3d 781. Moreover, LFNO alleges that Ms. Mipro admitted at trial that her employment agreement does not provide that she be paid “accrued future summer pay” through the academic year. Ms. Mipro was paid for the days she worked as she worked, and thus, LFNO avers that when Ms. Mi-pro was terminated at the end of November 2012, she was paid all the wages she was due for the days she worked as well as being paid for her accrued leave.
LFNO further maintains that Ms. Mi-pro’s payment theory is at odds with established statutory law. LFNO principally relies upon La.Rev.Stat. 23:634, entitled Contract forfeiting wages on discharge unlawful, which provides in pertinent part:
A. No person, acting either for himself or as agent or otherwise, shall require any of his employees to sign contracts by which the employees shall forfeit their wages if discharged before the contract is completed or if the employees resign their employment before the contract is completed; but in all such cases the employees shall be entitled to the wages actually earned up to the time of their discharge or resignation.
LFNO argues that Ms. Mipro was paid the wages specified for the period that she worked as required by La.Rev.Stat. 23:634.
LFNO further relies upon Avila v. Sanofi-Aventis, 11-661 (La.App. 5 Cir. 03/13/12), 90 So.3d 1132, wherein the Fifth Circuit applied La.Rev.Stat. 23:634. LFNO maintains that in Avila, the plaintiff was awarded a $40,000 bonus as a | ¿result of her work performance in 2008. The bonus was to be paid in three yearly installments in 2009, 2010, and 2011; however, the plaintiff was terminated in 2009, and thus only received the first of three installments for her 2008 bonus. Although the plaintiff alleged that she earned the entire amount of the bonus because it was based on work she performed throughout 2008, the Fifth Circuit held that the remaining installments of the bonus were not yet actually earned under La.Rev.Stat. 23:634, because all of the provisions of the eligibility criteria were met not at the time of her termination.
Based upon this holding, LFNO argues that in the instant matter Ms. Mipro similarly did not earn a pro rata share of the summer wages she seeks because she was not employed during the summer months when these wages would have been paid. She did not meet the eligibility criteria for summer pay because she was terminated before the summer of 2013. Ms. Mipro failed to present evidence to support her claim that she accrued wages for the summer months of 2013. She only relies upon her self-serving recollection of experiences with other employers, and her opinion that in some way she has accrued future pay for the summer months six months after her termination. Thus, like the plaintiff in Avila, she is not entitled to any additional wages.
It further argues that as a charter school it has the statutory authority to choose the method and frequency of how to pay the annual salaries of its teachers. La.Rev.Stat. 17:3997(A); La.Rev.Stat. 23:633.[5] Ms. Mipro’s argument that she *654 le,is owed wages based upon a ten-month pay period, when the LFNO has the statutory right to pay teachers on a twelvemonth pay period, lacks support. LFNO contends that she was timely paid for the days she worked under LFNO’s payment schedule that was established in accordance with La.Rev.Stat. 23:631.[6] Boudreaux v. Hamilton Medical Group Inc., 94-0879, pp. 4-5 (La.10/17/94), 644 So.2d 619, 622.
Moreover, LFNO contends that the district court’s judgment sets a precedent that infringes upon its right to determine its own pay structure and the terms of employment for its employees. It further maintains that the judgment is based upon Ms. Mipro’s opinion of what monies were due to her at termination, but it is not based upon the law, the policies of LFNO or any evidence. It contends that statutorily, Louisiana law affords it the right to choose the method and frequency of paying teachers’ annual salaries. La. Rev. Stats. 17:3997(A) and 23:633(A). LFNO argues that its compensation plan is designed to pay its teachers proportionately over 26 pay periods because teachers are expected to complete specific tasks, including drafting lesson plans and attending certification classes, before the school years begins. It further argues that the district court’s judgment sets a precedent that at termination, employees are owed wages accrued for a future time, a time not worked. Lastly, LFNO avers that the judgment penalizes it for opting to provide teachers the benefit of receiving a salary during the summer months and throughout the academic calendar for work they should be performing, such as renewing teaching certifications and creating lesson plans.
*655 A reviewing court may not overturn the judgment of the lower court absent an error of law or finding of fact that is manifestly erroneous or clearly wrong. Rodriguez v. Green, 12-0098, pp. 2-8 (La.App. 4 Cir. 6/20/12), 111 So.3d 1, 3 (citing Stobart v. State of Louisiana, Through Dep’t of Transp. & Dev., 617 So.2d 880, 882 (La.1993)). “The Supreme Court has identified a two-part test for the reversal of a fact finder’s determinations: (1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial lscourt; and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).” Id. [citations omitted].
In the matter sub judice, the district court recognized that Ms. Mipro was actively working on a ten-month schedule, though wages had been withheld from her paychecks in order for LFNO to pay her over a twelve-month schedule. The district court further reasoned that Ms. Mi-pro was entitled to those earned wages, i.e., the difference in pay between those two payment schedules, upon her termination. In its Reasons for Judgment, the district court explained:
Ms. Mipro testified that she believed she was to be paid a prorated percentage of her summer pay for the months she worked (August 2012-November 2012). Lycee Francais representative Julianne Ruocco testified that although teachers were not required to be in the classroom in the summer months, they were considered to be an employee for twelve months rather than ten months. This Court finds the testimony elicited by Ms. Mipro at the hearing regarding her unpaid wages for a ten month versus twelve month pay schedule believable. Thus, this Court finds that the defendant, Lycee Francais failed to pay Ms. Mipro for a portion of wages earned during her four month tenure. As this Court finds that Ms. Mipro’s suit for wages is well founded, she is also entitled to attorney’s fees and costs in the amount of twenty-five percent of the total award or $1,188.46 plus court costs.
In the instant matter, the district court weighed conflicting testimony from Ms. Mipro and from representatives of LFNO as to how wages should accrue for teachers in LFNO’s employ. Ms. Mipro’s argument was based upon her experiences of being paid at other learning institutions, while LFNO’s argument was principally based upon its classification of teachers as twelve-month employees and its statutory right to determine how to pay its teachers. The district court ultimately credited the testimony of Ms. Mipro. Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of | flfact should not be disturbed upon review. Rodriguez, p. 3, 111 So.3d at 3 [citations omitted]. Thus, we do not find that the district court erred in relying on Ms. Mipro’s testimony that she is due wages she already earned upon her termination. Moreover, we find that Ms. Mi-pro’s pursuit of the disputed wages is supported by La.Rev.Stat. 23:634, which, as previously noted, states that employees “shall be entitled to wages actually earned” up to the time of their termination. As stated previously, Ms. Mipro only sought that portion of her wages that she had already earned in the instant matter. Thus, statutorily it is not permissible for LFNO to retain the disputed wages and thereby benefit from Ms. Mipro’s labor without tendering adequate compensation to her.
Furthermore, we find that LFNO’s reliance upon Avila is misplaced. In Avila, a terminated pharmaceutical sales employee, Ruth Avila, sought to recover a portion of an unpaid bonus under the Louisiana *656 Wage Payment Act, La,Rev.Stat. 23:631, et seq., for wages remaining unpaid after termination of her employment. The district court held that she was not entitled to the bonus and ruled in her employer’s favor. Avila v. Sanofi-Aventis, U.S., 11-661 (La.App. 5 Cir. 3/13/12), 90 So.3d 1132, writ denied, 12-0813 (La.5/25/12), 90 So.3d 416. The Fifth Circuit upheld the district court’s reasoning that although Ms. Avila was awarded a bonus based upon work she performed in 2008, the bonus payments, which were to be paid in three installments, were contingent upon the quality of her performance and her continued employment. Thus, at the time of her termination, the remainder of her bonus payments had not fully vested because the Eligibility Criteria set by her employer had not been met. Id. at p. 10, 90 So.3d at 1137.
We find Avila to be factually distinguishable from the instant case for two (2) reasons: 1.) in the instant matter, Ms. Mipro sought wages, not a bonus, and |in2.) at the time the bonus was awarded in Avila, the policy of her employer was that certain conditions had to be met for Ms. Avila to receive each installment of her bonus, but said conditions were not met by her at the date of her termination.
The issue presented in the matter sub judice is analogous to one raised in Jeansonne v. Schmolke, 09-1467 (La.App. 4 Cir. 5/19/10), 40 So.3d 347. In Jeansonne, a terminated project manager, Nicole Jeansonne (“Ms. Jeansonne”), sued her employer, a general contractor and his company, seeking unpaid wages. Pursuant to the terms of Ms. Jeansonne’s employment, she was to receive as payment a percentage of profits upon completion of each project assigned. The district court awarded the unpaid wages and attorney’s fees to Ms. Jeansonne. The defendants appealed asserting numerous assignments of error, including that the district court erred by awarding Ms. Jeansonne “future” wages. Id. at p. 7, 40 So.3d at 357. Concluding that Ms. Jeansonne was indeed an at-will employee, we nevertheless held that the district court properly awarded her wages, similar to commissions, for work that she had already performed.[7] We reasoned:
... We agree with defendants that Ms. Jeansonne was not hired for a fixed time period, and therefore qualifies as an “at will” employee. However, considering the verbal agreement between Mr. Schmolke and Ms. Jeansonne, we do not find that any part of the amount awarded to Ms. Jeansonne constituted “future” wages. With regard to the projects that remained unfinished at the time of her discharge, Ms. Jeansonne did not seek payment for work she was to perform in the future; instead, she sought payment for work she had already performed, in major part, but was prevented from completing ...
Because Ms. Jeansonne sought her agreed-upon commissions rather than wages for work that was to be | n performed in the future, we find Saaclcs[8] to be inapplicable. We therefore reject defendants’ argument as to “future” wages.
Id. at p. 13, 40 So.3d at 358.
We do not find that the district court erred in holding that Ms. Mipro is entitled *657 to that portion of the wages she earned while working during the school year. LFNO pays its teachers less during the ten months that they are more actively working in order to pay them proportionately year-round. Nevertheless, Ms. Mi-pro’s pursuit of relief for the discrepancy in pay between that portion of the school year she actually worked (August 2012-November 2012) and the twelve-month payment schedule was a reasonable one. This holding neither detracts from the fact that Ms. Mipro’s employment was at-will or from LFNO’s ability to regulate the manner in which its employees are paid while in its employ.
Lastly, we address Ms. Mipro’s request for an award of attorney’s fees for defending the instant appeal. In Jean-sonne, we explained an increase in an ap-pellee’s attorney’s fees should be awarded where the appellee: 1.) has been awarded attorney’s fees by the district court and 2.) then successfully defends an appeal. Jeansonne, 09-1467, p. 21, 40 So.3d at 362 (citing Saacks, 03-0386, p. 25, 855 So.2d at 375). Nevertheless, we further reasoned that appellate courts do not generally consider making such an award unless the appellee has filed an answer to the appeal. Id. Ms. Mipro did not file an answer to the appeal in the matter sub judice; thus, we cannot award her attorney’s fees on appeal. | ^Nevertheless, we assess the costs of this appeal against LFNO. See Saacks, 03-0386, p. 26, 855 So.2d at 376.
DECREE
For the foregoing reasons, the judgment of the district court is affirmed and Lycée
|2LYCEE
Frangais de La Nouvelle-Orléans, Inc. is ordered to pay the costs of this appeal.
AFFIRMED
TOBIAS, J., concurs in the result and assigns reasons.
LANDRIEU, J., concurs in the result and assigns reasons.

. Ms. Mipro’s first name is spelled as "Darlene” in some portions of the record.

. Ms. Mipro’s employment contract with LFNO was admitted at trial as Plaintiff’s Exhibit 1. Pursuant to said contract with LFNO, she was employed for the 2012-2013 school year, which began in August 2012.

. Uniform Rules, Court of Appeal, Rule 2-12.4, provides in pertinent part, "All specifications or assignments of error must be briefed. The court may consider as abandoned any specification or assignment of error which has not been briefed.”

. Regarding termination, Section 6 of Ms. Mipro’s employment contract provides: an LFNO employee may resign his/her position with 60 days written notice. Similarly, your contract may be terminated, upon 60 days written notice, unless the termination is for cause, in which case it can be terminated at any time without notice.

. La.Rev.Stat. 17:3997(A), states in pertinent part:
A. (l)(a) The governing authority of any charter school may employ such faculty and staff members as it deems necessary. All potential charter school employees shall be notified of the specific benefits they will be offered, as specified in the school’s charter agreement. *654 (b) The nonprofit organization shall have exclusive authority over all employment decisions at the charter schools. However, as provided for in the charter, a nonprofit organization may enter into a contract with a for-profit organization to manage the charter school and may delegate to the for-profit organization such authority over employment decisions at the charter school as the nonprofit organization deems necessary and proper. Any delegation of this authority must be specifically delegated in a service provider agreement.
La.Rev.Stat. 23:633(A) states:
A. It shall be the duty of each employer subject to this Section to inform his employees at the time of hire what wages they will be paid, the method in which they will be paid and the frequency of payment along with any subsequent changes thereto. Except as provided under Subsection B of this Section, any employer that fails to designate paydays must pay his employees on the first and sixteenth days of the month or as near as is practicable to those days.

. La.Rev.Stat. 23:631, entitled Discharge or resignation of employees; payment after termination of employment, provides in pertinent part:
A. (l)(a) Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first.
[[Image here]]
(2) Payment shall be made at the place and in the manner which has been customary during the employment, except that payment may be made via United States mail to the laborer or other employee, provided postage has been prepaid and the envelope properly addressed with the employee's or laborer’s current address as shown in the employer's records. In the event payment is made by mail the employer shall be deemed to have made such payment when it is mailed. The timeliness of the mailing may be shown by an official United States postmark or other official documentation from the United States Postal Service.

. Commissions are considered wages under La.Rev.Stat. 23:631-32. Id. at p. 13, 40 So.3d 347, 358.

. In Saacks v. Mohawk Carpet Corp., 03-0386 (La.App. 4 Cir. 8/20/03), 855 So.2d 359, we affirmed the district court's holding that the plaintiff had entered into a fixed-term contract and as a result she was entitled to the remainder of her salary for the contracted period despite the fact that her position was eliminated a year after she had begun working.