STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

12-412 consolidated with  12-413


MATTHEW NEWSOM

VERSUS

GLOBAL DATA SYSTEMS, INC.

consolidated with

JARED PAVLU

VERSUS

GLOBAL DATA SYSTEMS, INC.


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-2008-5236 C/W C-2008-5577
HONORABLE JULES D. EDWARDS III, DISTRICT JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of Ulysses G. Thibodeaux, Chief Judge, John D. Saunders, Marc
T. Amy, Elizabeth A. Pickett, and James T. Genovese, Judges.


REVERSED AND RENDERED.


Amy, J., dissents for the reasons assigned by Judge Genovese.
Genovese, J., dissents and assigns written reasons.

**Mark R. Pharr, III**
**Robin A. Sylvester**
**Galloway, Johnson, Tompkins, Burr & Smith**
**328 Settlers Trace Blvd.**
**Lafayette, LA 70508**
**(337) 735-1760**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Global Data Systems, Inc.**

**Shelly D. Dick**
**Amy E. Newsom**
**Forrester & Dick**
**4981 Bluebonnet Blvd.**
**Baton Rouge, LA 70809**
**(225) 928-5400**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Matthew Newsom**
     **Jared Pavlu**

**SAUNDERS, J.**

**FACTS AND PROCEDURAL HISTORY:**

Plaintiffs/Appellants, Matthew Newsom and Jared Pavlu, are former employees of Defendant/Appellee, Global Data Systems (GDS). GDS is a Lafayette-based technology company that obtains contracts to integrate new technology for its clients. It manages networking and communications systems.

Upon beginning employment at GDS, Newsom and Pavlu signed multiple documents, including an employee handbook and an employment agreement. The employment agreement included a clause that indicated an employee would reimburse the company for expenses arising out of education and training for the twelve months preceding separation.

Both Pavlu and Newsom hold bachelor's degrees in engineering and various other certifications. Newsom was hired as a systems integrator, installing networking gear for GDS' clients. He dealt predominately with Cisco networking gear. Pavlu holds certifications in Microsoft Systems Engineering, is a National Certified System Administrator, and has experience integrating computer systems. During the course of their employment with GDS, Newsom and Pavlu were sent to various events conducted by GDS vendors so that GDS could sell and install certain technology products. These activities were and are a business necessity for GDS.

GDS has a special relationship with Cisco, the largest vendor of computer networking gear, as a "gold partner," which entitled GDS to a 45% discount on Cisco products. To maintain this "gold partner" status, GDS is required to have a certain volume of sales and show its employees hold certain Cisco certifications. GDS also requires its employees to attend events in order to comply with contracts for work with its customers.

In April 2008, Newsom and Pavlu resigned their employment with GDS. Newsom anticipated his last paycheck would be $3,541.67 with a bonus of $2,125.00. Pavlu expected to receive his last paycheck, $2,708.34, with a bonus of $1,525.00. Instead of receiving these final wages, each received checks made out for $0.00, as well as bills and expense sheets based on a provision in GDS' employee handbook. An expense report was attached to the bill which included reimbursements for business expenses during the last twelve months of their employment. Newsom's bill was for $1,677.48. Pavlu's bill was for $6,638.30.

Newsom's expense report included a two-hour lunch hosted by Motorola in Houston, Texas, where Motorola introduced a new radio product, as well as gas expenses for the trip. Upon his return from this lunch, Newsom installed the new Motorola product for one of GDS' clients. Additionally, there was an expense report for the Cisco Networkers Convention in Los Angeles, California, as well as a "Cisco Certified Internet Expert" test. This certification helped maintain GDS' "gold partnership" with Cisco, which required a certain number of certifications. Newsom was asked to attend both of these events by his supervisor, Robert Guidry.

Pavlu's expense sheet included seminars for a new Cisco product, which GDS endeavored to start selling. Also included was an expense report for Cisco "Certified Voice Professional" certification, which Pavlu attended in California. This certification was used by Pavlu upon his return to install products for GDS' customers, yielding $45,000.00 for GDS over two and a half months. This certification also helped maintain GDS' "gold partnership" with Cisco, which required a certain number of certifications. Pavlu was asked to attend both of these events by his supervisor, Robert Guidry.

Newsom and Pavlu made written demands and, subsequently, filed suit under La.R.S. 23:631 for their final wages. These petitions for damages were

consolidated for trial. GDS filed a reconventional demand against both Newsom and Pavlu seeking payment for the bills.

A trial was held on May 23, 2011. The trial court held Pavlu and Newsom were bound by provisions of the employment agreement and entered judgment in favor of GDS and against Pavlu. The trial court held that one of the items charged to Newsom was not covered by the language of the employment agreement and entered judgment for Newsom against GDS in the amount of $21,250.00, plus attorney fees. Upon a motion by GDS, the trial court granted a new trial and reversed itself on the matter of Newsom's billing sheet and the $21,250.00. The trial court entered final judgment in favor of GDS, upholding the employment handbook provisions. It found the employment agreement is a contract in accordance with Louisiana law. It held the expenses owed by Newsom and Pavlu were authorized through offset, as there was a specific term to the obligation to repay educational expenses.

Pavlu and Newsom appeal seeking back wages, penalties, attorney fees, and costs.

**ASSIGNMENTS OF ERROR:**

On appeal, Matthew Newsom and Jared Pavlu assert the following assignments of error:

1. The trial court erred when it determined that the employment agreement was a valid contract between parties.

2. The trial court erred when it determined that the "education and training" provision in the employment agreement was a valid provision in an employment contract.

3. The trial court erred in excluding the testimony of Jennifer Smith.

3

4. The trial court erred when it reversed itself on Global Data System's motion for a new trial.

## LAW AND ANALYSIS:

The employer-employee relationship is a contractual relationship. As such, an employer and employee may negotiate the terms of an employment contract and agree to any terms not prohibited by law or public policy. When the employer and employee are silent on the terms of the employment contract, the civil code provides the default rule of employment-at-will. Employment-at-will is firmly established in Louisiana law. This default rule is contained in La.Civ.Code art. 2747, which states: "A man is at liberty to dismiss a hired servant attached to his person or family, without assigning any reason for so doing. The servant is also free to depart without assigning any cause."

Without a specific contract or agreement which establishes a fixed term of employment, an "at will" employee is free to quit at any time without liability to his or her employer and, likewise, may be terminated by the employer at any time, provided the termination does not violate any statutory or constitutional provision. *See Fauntleroy v. Rainbow Marketers*, 04-926, pp. 2-3 (La.App. 3 Cir. 11/10/04), 888 So.2d 1045, 1048. Unless an employment contract is for a **definite period of time**, there is no enforceable action for damages for dismissal under state law, as the contract can be terminated at the will of either employee or employer. *Reyes-Silva v. Drillchem Drilling Solutions, LLC.*, 10-1017 (La.App. 3 Cir. 2/2/11), 56 So.3d 1173, *writ denied*, 11-0732 (La. 5/20/11), 63 So.3d 983 (*emphasis added*).

In dealing with an employee's abrupt departure from her place of employment without notice, the second circuit held it was unreasonable for the employer to withhold some of her pay. The court stated, "[i]n at-will employment,

4

the employee may quit at any time *without liability to her employer.* Any notion to the contrary is *per se* unreasonable." *Martin v. Sterling Associates*, 46,461, p. 11 (La.App. 2 Cir 9/15/11), 72 So.3d 411, 418 (*emphasis in original) (citations omitted)*. An at-will employee simply has no "legally protected interest in his employment." *Durand v. McGaw,* 93–2077, p. 4 (La.App. 4 Cir. 3/29/94), 635 So.2d 409, 411, *writ denied*, 94-1081 (La. 6/17/94), 640 So.2d 1318; *see also Mendonca v. Tidewater Inc.,* 05–1166 (La.App. 4 Cir. 5/31/06), 933 So.2d 233, *writ denied*, 06-1808 (La. 10/27/06), 939 So.2d 1280.

Employment manuals have been held to be merely unilateral statements by employers as to what actions are unacceptable and could lead to dismissal. *See Wallace v. Shreve Memorial Library*, (5th Cir.1996), 79 F.3d 427, *certified question denied*, 1996-0792 (La. 5/17/96), 673 So.2d 602*, appeal decided*, 97 F.3d 746. This does not meet the requirements of an employment contract as would modify an employee's at-will status and create a property interest in employment. These cases suggest, forcefully, that the at-will employment concept is a two-edge sword which protects both the employer and employee, with equal force, from liability at separation.

It in undisputed that Newsom and Pavlu are at-will employees. Appellee states so in its brief. Despite calling them at-will employees, GDS states the obligations to repay educational expenses are subject to a term. This is not a term of employment. The employees are either at will or they are not, and it is clear that the employment agreement did not modify their contractual relationship with GDS such as to break out of the default regime of at-will employment. There is no term of employment---it is clear that Newsom and Pavlu were operating under an indefinite term. As such, they were free to leave their jobs at any time without incurring liability for discharge.

Upon discharge they were owed wages earned: an employer has a duty to pay the amount then due under the terms of employment not later than fifteen days following the date of discharge. La.R.S. 23:631(A)(1)(a). The Payment of Employees Law, La.R.S. 23:631–653, requires the prompt payment of employees upon discharge. The sections applicable to this case are as follows:

§ 631. Discharge or resignation of employees; payment after termination of employment
A. (1)(a) Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first.

§ 632. Liability of employer for failure to pay; attorney fees
Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.

§ 635. Assessment of fines against employees unlawful; exceptions
No person, acting either for himself or as agent or otherwise, shall assess any fines against his employees or deduct any sum as fines from their wages. This Section shall not apply in cases where the employees wilfully or negligently damage goods or works, or in cases where the employees wilfully or negligently damage or break the property of the employer, or in cases where the employee is convicted or has pled guilty to the crime of theft of employer funds, but in such cases the fines shall not exceed the actual damage done.

To recover penalty wages, the claimant must show that (1) wages were due and owing; (2) demand for payment thereof was made where the employee was customarily paid; and (3) the employer did not pay upon demand. *Winkle v. Advance Products & Systems,* 98-694 (La.App. 3 Cir. 10/28/98), 721 So.2d 983,

990, quoting *Hebert v. Hebert*, 97-298, p. 9 (La. App. 3 Cir. 1/7/98), 706 So.2d 1007, 1013, *writ denied*, 98-0353 (La. 3/27/98), 716 So.2d 888.

This statute is penal in nature and, therefore, must be strictly construed in favor of the one receiving benefits under that chapter of the law. *Fontenot v. Reddell Vidrine Water Dist.*, 02-439 (La.1/14/03), 836 So.2d 14. Equitable defenses are available, and penalty wages are not to be absolutely imposed. *Pace v. Parker Drilling Co. and Subsidiaries*, 382 So.2d 988 (La.App. 1 Cir.), *writ denied,* 383 So.2d 1016 (La.1980). Generally, when there is a good faith question of whether the employer actually owes past due wages, resistance to payment will not trigger penalty wages. However, when the employer is arbitrary, sets out procedural pitfalls for the employee, or is negligent in failing to pay past due wages, penalty wages will be assessed. *Id.*

Louisiana courts have recognized that an employer may have a claim of setoff or compensation against former employees. Employers have been allowed a setoff against a former employee's unpaid wage claim for damages pertinent to physical property or for definitive amounts of money owed by the employee for salary overpayment, loans, or outstanding account balances. *See Richard v. Vidrine Automotive Services, Inc.,* 98-1020 (La.App. 1 Cir. 4/1/99), 729 So.2d 1174. This situation arises when, for instance, the employer seeks setoffs against wages based on damage caused by the employee, *Reeves v. A & M Pest Control Service, Inc.*, 379 So.2d 834 (La.App. 4 Cir. 1980), *Colbert v. Mike-Baker Brick Company of New Iberia, Inc.*, 326 So.2d 900 (La.App. 3 Cir.), *overruled in part on other grounds*, 364 So.2d 555 (La.1978); or for lost equipment, uniforms, and overpayment from a previous paycheck, *Henderson v. Kentwood Spring Water*, 583 So.2d 1227 at 1230, (La.App. 1 Cir. 1991); or on advances made to the employee, *Doucet v. Plantation Manor, Inc.*, 382 So.2d 984 (La.App. 1 Cir. 1980);

or for overpayment of wages to an employee who had not worked scheduled holidays prior to discharge, *Pinion v. Union Carbide Corporation*, 490 So.2d 479 (La.App. 4 Cir. 1986); or for the balance on an employee's revolving charge account with her employer, *Brown v. Navarre Chevrolet, Inc.*, 610 So.2d 165, 171 (La.App. 3 Cir. 1992); or because property of the employer is allegedly being improperly retained by the employee, *Carriere*, 364 So.2d 555 at 557 (La.1978); *Landry v. Pauli's Inc.*, 496 So.2d 431, 434 (La.App. 5 Cir.), *writ denied*, 500 So.2d 428 (La.1987).

The instant case can be differentiated from setoff cases such as those above and *King v. American Rice Growers Exchange*, where under the particular facts, we found nothing repugnant in the requirement of the former employer for an employee to satisfy his account out of his last week's wages, (La.App. 3 Cir. 1982). In *King*, the employee had knowledge of the requirement and enjoyed the advantages of special discounts. The instant case is more in line with *Brown v. Navarre Chevrolet, Inc.*, 610 So.2d 165 (La.App. 3 Cir. 1992), where we held that whether or not former employee/plaintiff received written notice of the policies or was aware of the policies which would limit the last paycheck, was not significant because the deductions were illegal violations of the clear language of La.R.S. 23:635.

In *Service Investors Ltd. v. Scully*, 08-1062, (La.App. 3 Cir. 3/4/09), 9 So.3d 910, there was an employment contract between an employee and employer such as to break out of the at-will employment scheme. The contract contained a penalty that stated if the employee left prior to the five-year term, he would owe a year's salary. We held that such an employment contract is against public policy and is unlawful and unenforceable. In *Scully*, a term existed, so this court reached the issue of reasonableness. Here, there is no term, so it is impermissible to have a

penalty for leaving early. Such a provision violates at-will principles, La.R.S. 23:631, and public policy protections afforded employees. The penalty here is less onerous, but the employees are not bound to a term; thus, we do not reach the same reasonableness analysis as we did in *Scully*.

In *Becht v. Morgan Buildings & Spas, Inc.*, 02-2047 (La.App. 1 Cir. 6/21/2002), 822 So.2d 56, employer Morgan asserted the issue at suit was governed by the terms of an employment contract. The court held that persons may not, by their juridical acts, derogate from laws enacted for the protection of the public interest. Any act in derogation of such laws is an absolute nullity. La.C.C. art. 7; *Morse v. J. Ray McDermott & Co., Inc.*, 344 So.2d 1353 (La.1976). Furthermore, in *Goulas v. B&B Oilfield Services, Inc.*, 01-934 (La.App. 3 Cir. 8/10/11), 69 So.3d 750, *writ denied,* 11-1951 (La. 11/14/11), 75 So.3d 945, we held that a former employees' contracts with a former employer, where they agreed to payment of outstanding commissions in installments, thus having the direct effect of excusing employer from meeting its statutory obligation to pay commissions owed upon resignation, were void as against public policy.

The provisions of La.R.S. 23:631 and 632 are for the protection of employees. *See Guidry v. Anderson-Dunham, Inc.*, 597 So.2d 1184 (La.App. 1 Cir. 1992). The main purpose of this legislation is to compel an employer to pay the earned wages of an employee promptly after his dismissal or resignation. *Wilson v. Inessa Stewart's Antiques, Inc.*, 96-2767 (La.App. 1 Cir 2/20/98), 708 So.2d 1132, *writ denied,* 98-0777 (La.5/8/98), 718 So.2d 435. This legislation strictly forbids an employer from requiring an employee to forfeit his wages upon resignation and provides that the employee shall be entitled to the wages "actually earned" up to the time of their resignation. Even those employed

under a collective bargaining agreement are protected by these statutory provisions. La.R.S. 23:640.

Clearly, prompt payment of wages to employees protects the public interest. Therefore, as in *Morgan*, GDS cannot rely on contract terms in direct violation of this well-established Louisiana law. *See also Beard v. Summit Inst. for Pulmonary Med. and Rehab., Inc.*, 97-1784 (La.3/4/98), 707 So.2d 1233. We find that, as in *Goulas*, this is an employer trying to skirt its statutory obligations to its former employees. This is void as against public policy. It also violates the basic principles of at-will employment. Newsom and Pavlu are at-will employees and to withhold their last paychecks would be equivalent to imposing liability on them for leaving their jobs. The open-ended nature of the contract means that Newsom and Pavlu would never be able to resign without incurring liability for educational expenses.

Collecting debts owed by former employees to their employers for benefits accrued is a fundamentally different principle than requiring employees to reimburse for training and education that significantly benefited the employer. It should be noted that GDS benefited when its employees attended the training both because of its preferential contracts with Cisco and Microsoft and because GDS was able to earn revenue as a result of its employees' new skills. The record shows GDS benefited greatly each time it sent Newsom or Pavlu to a seminar or when they received training or certifications. The employees had no choice but to undergo said training and education in order to keep their employment. GDS is in the business of selling and installing innovative technology products. It needs its employees to be trained in the latest technological advances in order to be functional. The terms in GDS' employee handbook are void as they are manifestly unreasonable and against public policy. These policies held by GDS must give

way to the protections warranted former employees under La.R.S. 23:631, *et seq.*, and employment-at-will doctrine, in furtherance of broader societal policies, such as maintenance of a free and efficient flow of human resources.

The third assignment of error raised by Appellants as to the testimony of Jennifer Smith was not briefed and, as such, is abandoned and moot. Finally, due to the reasons enumerated in the above opinion, Appellants' fourth assignment of error as to GDS' motion for a new trial is moot.

## CONCLUSION:

Global Data Systems owes its former employees, Matthew Newsom and Jared Pavlu, the wages earned upon their discharge in April 2008, plus ninety days wages at the employee's daily rate of pay, as provided in La.R.S. 23:632, for GDS' refusal to comply with the provisions of La.R.S. 23:631.

Newsom and Pavlu are further awarded $6,500.00 in attorney fees for work done at trial and appellate levels.

Costs of this appeal are assessed to GDS.

**REVERSED AND RENDERED.**

MATTHEW NEWSOM

VERSUS

GLOBAL DATA SYSTEMS, INC.

consolidated with

JARED PAVLU

VERSUS

GLOBAL DATA SYSTEMS, INC.

**GENOVESE, J., dissents and assigns the following reasons.**

The employment agreements in this case (the contract) entered into by Newsom and Pavlu with their employer, Global Data Systems, are binding contracts for at-will employment. The words in the contract are clear and explicit, do not lead to absurd consequences, are not ambiguous, and are not contrary to any public policy.

Newsom testified that he read the contract before he signed it and understood that by signing it he was agreeing to its terms. Pavlu, on the other hand, testified that he did not read the contract; however, by law, he is nonetheless bound by it. *McGoldrick v. Lou Ana Foods, Inc.*, 94-400 (La.App. 3 Cir. 11/2/94), 649 So.2d 455.

Paragraph 6. C. of the contract requires an employee to reimburse the company for funds expended by the company for the employee's education or training within the twelve months immediately preceding the employee's

separation from the company.  Paragraph 6. B. recognizes and authorizes an offset by the company against any sums the company owes to its employee.

In my view, the deductions by Global Data Systems from Newsom and Pavlu's final wages were a lawful offset as set forth and agreed to pursuant to a lawful and binding contract upon termination of their respective employment.

I respectfully disagree with the majority opinion in this case and dissent therefrom.  I would affirm the trial court judgment in all respects.