# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 16-382


CHANCZE LEPRETTRE

VERSUS

RCS, LLC


**********

APPEAL FROM THE
LAFAYETTE CITY COURT
PARISH OF LAFAYETTE, NO. 2015CV4081
HONORABLE DOUGLAS J. SALOOM, CITY COURT JUDGE

**********

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

**********


Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and Billy Howard Ezell, Judges.


**AFFIRMED.**


Gregory J. Miller
Miller, Hampton & Hilgendorf
3960 Government Street
Baton Rouge, LA 70806
Telephone: (225) 343-2205
COUNSEL FOR:
    Plaintiff/Appellee - Chancze Leprettre

Michael P. Maraist
Maraist Law Firm, APLC
600 Jefferson Street - Suite 810
Lafayette, LA 70501
Telephone: (337) 266-2230
COUNSEL FOR:
    Defendant/Appellant - RCS, LLC

**THIBODEAUX, Chief Judge.**

Defendant, RCS, LLC ("RCS"), the former employer of appellee, Chancze Leprettre, appeals a trial court judgment awarding Mr. Leprettre $1,219.72 in past due wages, $19,083.60 in penalty wages, and $3,500.00 in attorney fees pursuant to La.R.S. 23:632. Upon termination of Mr. Leprettre's employment, RCS offset certain training costs pursuant to a Training Loan Agreement ("Loan Agreement") which the trial court determined violated public policy. Mr. Leprettre answers the appeal and requests additional attorney fees for work performed on appeal.

For the following reasons, we affirm the judgment of the trial court, and we award attorney fees in the amount of $4,000.00 to Mr. Leprettre on appeal.

I.

## ISSUES

There are four issues before the Court:

(1)    whether an employer can offset expenses for required preemployment training prerequisites and withhold these expenses from an employee's final wages pursuant to a written agreement;

(2)    whether RCS properly asserted a good faith defense to the imposition of penalty wages by relying on the terms of the Loan Agreement;

(3)    whether Mr. Leprettre introduced sufficient evidence at trial that he made legal demand for his final wages; and

(4)    whether the trial court properly calculated Mr. Leprettre's daily rate of pay for purposes of computing penalty wages owed pursuant to La.R.S. 23:632.

## II.

### STANDARD OF REVIEW

An appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. *Stobart v. State, Through DOTD*, 617 So.2d 880 (La.1993); *Rosell v. ESCO*, 549 So.2d 840 (La.1989). A trial court's determination with regard to whether a plaintiff is entitled to penalty wages under La.R.S. 23:632 is a factual finding, which can only be reversed on appeal if manifest error occurs. *Kaplon v. Rimkus Consulting Grp., Inc. of La.*, 09-1275 (La.App. 4 Cir. 4/28/10), 39 So.3d 725, *writ denied*, 10-1207 (La. 7/2/10), 39 So.3d 587.

## III.

### FACTS AND PROCEDURAL HISTORY

Mr. Leprettre was hired by RCS effective January 21, 2015. Mr. Leprettre was an at-will employee of RCS. At the time of his hire, Mr. Leprettre entered into a Loan Agreement with RCS. The Loan Agreement stated that RCS would lend Mr. Leprettre $1,625.00 in training costs paid in advance by RCS. If Mr. Leprettre worked for RCS for at least six months following the successful completion of the training, the loan would be considered paid in full and Mr. Leprettre would have no further obligation to RCS. If Mr. Leprettre worked for less than six months, the training costs would be prorated. Mr. Leprettre completed the last of the training listed in the Loan Agreement on January 30, 2015, with the six-month anniversary of the training date occurring 181 days later on July 30, 2015. The last day that Mr. Leprettre performed work for RCS was on

2

March 9, 2015, which was thirty-eight days after his completion of the required training.

On March 9, 2015, RCS terminated Mr. Leprettre's employment. Mr. Leprettre's payroll for his final pay period for gross wages was $1,613.00. After RCS subtracted the standard payroll deductions from Mr. Leprettre's gross wages, his final net wages amounted to $1,219.72. RCS argues that with respect to the Loan Agreement's original principal balance of $1,625.00, Mr. Leprettre was entitled to a credit of $341.16 for working thirty-eight of 181 days of the loan forgiveness period, resulting in a loan balance of $1,283.84. RCS further argues that because Mr. Leprettre's prorated loan balance of $1,283.84 was greater than his final net wages of $1,219.72, RCS properly offset the entirety of Mr. Leprettre's wages against the prorated loan balance per the terms of the Loan Agreement.

As an RCS Maintenance Technician, Mr. Leprettre's typical work schedule consisted of working "seven days on, seven days off." Mr. Leprettre typically worked twelve-hour shifts each day; however, sometimes the position required that employees work overtime. RCS paid Mr. Leprettre $14.00 per hour for the first forty hours worked in a work week, plus overtime at $21.00 per hour for all hours worked over forty in a work week. Mr. Leprettre's last two-week pay period with RCS began on Monday, March 2, 2015, and ended on Sunday, March 15, 2015. During the first week of the pay period, Mr. Leprettre worked a total of ninety-one hours. RCS thereafter informed Mr. Leprettre of the termination of his employment, with March 9, 2015 being his last day of work. Mr. Leprettre's final pay stub indicates that he worked forty hours at regular rate of pay ($14/hour) and fifty-one hours at time-and-a-half of his regular rate of pay ($21/hour).

3

On appeal, RCS argues that the trial court improperly relied on this Court's prior decision in *Newsom v. Global Data Systems, Inc.*, 12-412, 12-413 (La.App. 3 Cir. 12/12/12), 107 So.3d 781, *writ denied*, 13-429 (La. 4/5/13), 110 So.3d 595, in holding that the Loan Agreement's final wage deduction provision is void as against public policy. RCS further argued that even in the alternative that RCS could not legally offset Mr. Leprettre's loan balance against his final wages, RCS established an affirmative defense to the imposition of penalty wages by its good faith reliance on the terms of an otherwise enforceable loan agreement. RCS further contends that Mr. Leprettre did not introduce evidence at trial that he made proper legal demand on RCS for his final wages prior to filing suit, which is fatal to his claim for penalty wages. Last, RCS argues that the trial court failed to strictly construe the penalty wage provision of La.R.S. 23:632, when it improperly included overtime pay in its calculation of Mr. Leprettre's daily rate of pay.

## IV.

## LAW AND DISCUSSION

### *Newsom* and Public Policy

RCS argues that Mr. Leprettre and RCS entered into an enforceable loan agreement and that RCS properly offset the amounts due against Mr. Leprettre's final wages pursuant to the Loan Agreement. Specifically, RCS contends that the trial court improperly relied on this Court's prior decision in *Newsom*, 107 So.3d 781, in holding that the Loan Agreement's final wage deduction provision is void as against public policy. In *Newsom* the court held that where employees were at-will, the employment contract requiring them to

4

reimburse their employer company for education and training expenses after separation, was void as against public policy. *Id.*

RCS contends that the Loan Agreement is distinguishable from the employment agreement at issue in *Newsom* insofar as the Loan Agreement was an employee loan for a short, defined period of time, and provided for a remission of the debt over that time period. In contrast, the employment agreement in *Newsom* was an open-ended, twelve-month-training expense reimbursement requirement, that applied to the terminated employee regardless of his length of service. This distinction, while accurate, is not outcome determinative. The trial court was correct in ruling that *Newsom* is controlling law in this matter.

In *Newsom*, this Court ruled that the agreement was void as against public policy because it created liability for an at-will employee. It is the fact of liability at discharge which violates public policy, thus rendering the Loan Agreement at issue null and void.

> Without a specific contract or agreement which establishes a fixed term of employment, an "at will" employee is free to quit at any time without liability to his or her employer and, likewise, may be terminated by the employer at any time, provided the termination does not violate any statutory or constitutional provision.

*Newsom*, 107 So.3d 781, 785. *Newsom* focused extensively on the dynamics of at will employment. The court held that unless there is a contract for a definite period of time, there is no enforceable action for damages for dismissal under state law because the agreement is at will. *Id.* Because it is at will, it is against public policy to take a setoff unless the setoff is for specific things such as loans, damages caused by an employee, lost equipment, uniforms, over-payment from a previous paycheck, or property that is being improperly retained by the employee.

The court in *Newsom* continued by citing *Martin v. Sterling Associates, Inc.*, 46,461, p. 11 (La.App. 2 Cir. 8/10/11), 72 So.3d 411, 418 (footnote omitted) (citation omitted), stating that, "[i]n at-will employment, the employee may quit at any time *without liability to her employer*. Any notion to the contrary is *per se* unreasonable." Here, there is no question that Mr. Leprettre was an at-will employee. The trial court was correct in determining that it is illogical and inequitable to allow an employer to contract with its employees in such a manner as RCS has.

In order to secure employment, the employees must sign a loan agreement to reimburse RCS for any training expense if employment is terminated for any reason before working a six-month period following the completion of training. Therefore, RCS can unilaterally terminate an individual's employment for any reason right before the expiration of six months and then demand reimbursement for the training because the employee did not work a full six months. As an at-will employee, Mr. Leprettre was free to leave his job, whether by termination or choice, at any time without incurring liability for discharge. We agree with the trial court that the Loan Agreement is not enforceable and is considered null and void as against public policy in Louisiana.

**Equitable Defense**

RCS contends that even if RCS failed to pay wages due, it has an equitable defense to the imposition of penalty wages based on a good faith defense. Louisiana Revised Statutes 23:632(B) states:

> When the court finds that an employer's dispute over the amount of wages due was in good faith, but the employer is subsequently found by the court to owe the amount in dispute, the employer shall be liable only for

6

the amount of wages in dispute plus judicial interest incurred from the date that the suit is filed. If the court determines that the employer's failure or refusal to pay the amount of wages owed was not in good faith, then the employer shall be subject to the penalty provided for in Subsection A of this Section.

"Whether or not there is an equitable defense to penalty wages depends on the particular facts of each case." *Pace v. Parker Drilling Co. & Subsidiaries*, 382 So.2d 988, 990 (La.App. 1 Cir), *writ denied*, 383 So.2d 1016 (La.1980). *Beard v. Summit Institute of Pulmonary Medicine & Rehabilitation, Inc.*, 97-1784 (La. 3/4/98), 707 So.2d 1233, 1237, stated that, "[r]eliance on an unlawful company policy does not constitute a good faith non-arbitrary defense to liability for unpaid wages." Furthermore, in order for the employer to be held liable for penalty wages, the employer's actions must have been motivated through bad faith, or he must be found to have acted in an arbitrary or unreasonable manner given the circumstances. *See Menard v. Roy Young, Inc.*, 441 So.2d 28 (La.App. 3 Cir. 1983), *writ denied*, 444 So.2d 122 (La.1984). "[U]nder the general rule, a contract that is against public policy will not support an equitable defense so as to defeat an award of penalty wages." *Goulas v. B & B Oilfield Servs., Inc.*, 10-934, 10-1393, p. 20 (La.App. 3 Cir. 8/10/11), 69 So.3d 750, 765, *writ denied*, 11-1951 (La. 11/14/11), 75 So.3d 945.

Having determined that the Loan Agreement was void as against public policy, RCS does not have a good faith defense to penalties because reliance on an unlawful company contract is not considered to be a good faith defense to penalties.

**Demand for Penalty Wages**

On appeal, RCS argues that Mr. Leprettre's claim for penalty wages should be denied altogether for his failure to establish that he made a proper demand for wages due, including his failure to introduce the petition at trial. In order to recover penalty wages pursuant to La.R.S. 23:632, Mr. Leprettre must show that "'(1) wages were due and owing; (2) demand for payment thereof was made where the employee was customarily paid; and (3) the employer did not pay upon demand.'" *Hebert v. Ins. Ctr., Inc.*, 97-298, p. 9 (La.App. 3 Cir. 1/7/98), 706 So.2d 1007, 1013, *writ denied*, 98-353 (La. 3/27/98), 716 So.2d 888. We disagree with RCS' contentions. Attached to Mr. Leprettre's petition was a demand letter for full wages upon termination. This demand was admitted by RCS in its answer to Mr. Leprettre's petition and cannot now be denied as it constituted a judicial confession.

Attached to his original petition is a letter that Mr. Leprettre sent Ms. Cherry, a human resources manager at RCS. In the letter Mr. Leprettre demands full payment of wages due upon termination by April 6, 2015. Mr. Leprettre continues in his letter by stating that if wages are not paid by April 6, 2015, he will file suit against RCS. RCS acknowledges the jurisprudence that provides that the filing of a lawsuit can establish demand for purposes of La.R.S. 23:632.

The letter Mr. Leprettre sent to Ms. Cherry constitutes part of the original petition. "A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." La.Code Civ.P. art. 853. As stated in *First National Bank v. Drexler*, 184 So. 607, 610 (La.App. 2 Cir. 1938), "[t]he note is attached to the petition and made part thereof, therefore, it controls the allegations of the petition."

Consequently, in its answer to petition, RCS admitted that Mr. Leprettre sent written correspondence to Ms. Cherry, demanding full payment of wages. Louisiana Civil Code Article 1853 states: "A judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it. A judicial confession is indivisible and it may be revoked only on the ground of error of fact."

As an attachment to the original petition, Mr. Leprettre's letter to Ms. Cherry demanding wages is a part of the petition. RCS' answer to petition, admitting to the existence of such a letter, constitutes a judicial confession. "[A] party may be precluded from appealing an issue or from contesting a fact if, under LSA-C.C.P. art. 2085, he confessed to or acquiesced in the judgment. Under LSA-C.C. art. 1853 he cannot contest a fact or issue if he has judicially admitted it during the proceedings." *Jones v. Gillen*, 564 So.2d 1274, 1278 (La.App. 5 Cir. 1990), *writs denied*, 568 So.2d 1080, 1081 (La.1990). *See also C.T. Traina, Inc. v. Sunshine Plaza, Inc.*, 03-1003 (La. 12/3/03), 861 So.2d 156. Therefore, RCS has already admitted that Mr. Leprettre made proper demand for wages and cannot now contest such a fact on appeal. Mr. Leprettre's written demand for wages, attached to his petition, is sufficient formal demand for wages to trigger penalty wages under La.R.S. 23:632.

Furthermore, Mr. Leprettre testified that he dropped off his uniforms and requested his last paycheck from his employer. He was told that he would receive it in two weeks. Another human resources manager for RCS, Kevin Jones, testified that Mr. Leprettre's last pay stub was processed on March 20, 2015. Based on this testimony and timeline, Mr. Leprettre's verbal demand for wages occurred prior to when human resources admittedly processed his last pay stub on

9

March 20, 2015. This is well over ninety days prior to the rendition of judgment in this case.

For the foregoing reasons, we affirm the trial court's ruling that Mr. Leprettre made proper demand for wages.

**Daily Rate of Pay**

Louisiana Revised Statutes 23:632(A) states:

> Except as provided for in Subsection B of this Section, any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the less amount of penalty wages.

The letter Mr. Leprettre sent to Ms. Cherry demanded full wage payment by April 6, 2015. While April 6, 2015 is not the date of demand, we are unable to discern from the record the exact date the letter was sent to Ms. Cherry. Implicit in the email, however, is that it was sent before April 6. Therefore, we rely upon April 6, 2015 as the date full wage payment is expected, which is more than ninety days from the date of demand to the date of judgment. In addition, Mr. Leprettre's verbal demand for wages was made more than ninety days prior to judgment. Mr. Leprettre is thus due ninety days wages at his daily rate of pay.

RCS contends that the trial court improperly calculated Mr. Leprettre's daily rate of pay by including overtime wages for purposes of calculating penalty wages under La.R.S. 23:632. Under La.R.S. 23:632, an employer is potentially liable to its employee for up to ninety days wages at the employee's daily rate of pay. Penalties "should not be extended beyond the plain

wording of the statute." *Smith v. Coffman,* 46,793, p. 25 (La.App. 2 Cir. 2/8/12), 87 So.3d 137, 152.

It is undisputed that Mr. Leprettre was hired to work at RCS with an hourly rate of pay of $14.00 and overtime rate of pay at $21.00 per hour. Mr. Leprettre testified that he was hired to work seven days for twelve hours per day and then seven days off, which was his regular work schedule. Mr. Leprettre's regular work schedule always included overtime hours, making those overtime hours a part of his daily rate of pay. We agree with the trial court: "If the custom of the job is to always have overtime, then that's the job." The trial court determined that when one averages the $14/hour at regular pay and $21/hour at overtime pay, the average daily wage is $17.67 an hour. The trial court then multiplied $17.67 by ninety-one hours, which was accurately reflected in Mr. Leprettre's final paycheck. For the foregoing reasons, we find no manifest error in the trial court's calculation of Mr. Leprettre's daily rate of pay.

**Attorney Fees**

Mr. Leprettre filed an answer to appeal seeking attorney fees for work necessitated by the appeal. Louisiana Revised Statues 23:632(C) states that:

> Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed at costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever by filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.

"A 'well-founded suit' is one wherein an employee recovers unpaid wages." *Goulas*, 69 So.3d at 762. Mr. Leprettre brought a well-founded suit for unpaid wages, as shown above. As RCS has not paid the amount of wages owed to

11

Mr. Leprettre, an award of reasonable attorney fees is appropriate. We find that RCS did not act reasonably or in good faith in denying Mr. Leprettre his final wages, and RCS' reliance on a Loan Agreement that is void as against public policy entitles Mr. Leprettre to attorney fees in the amount of $4,000.00 for work done on appeal.

V.

**CONCLUSION**

The judgment of the trial court is affirmed. Costs of this appeal are assessed to RCS, LLC.

**AFFIRMED.**