# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 22-564


DUSTIN LEBLANC

VERSUS

LEBLANC'S AUTOMOTIVE & GLASS
CENTER, LLC, ET AL.


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20202972
HONORABLE VALERIE C. GOTCH GARRETT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## D. KENT SAVOIE
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of D. Kent Savoie, Jonathan W. Perry, and Wilbur L. Stiles, Judges.


**AFFIRMED.**

**James Michael Wooderson**
**Attorney at Law**
**714 E. Kaliste Saloom Rd #A1**
**Lafayette, LA 70508**
**(337) 504-4434**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
    **Randy LeBlanc**
    **LeBlanc's Automotive & Glass Center, LLC**

**Lee C. Durio**
**Attorney at Law**
**241 W. Mills Avenue**
**Breaux Bridge, LA 70517**
**(337) 909-1111**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Dustin LeBlanc**

**SAVOIE, Judge.**

Defendant Randy LeBlanc appeals a judgment rendered against him and in favor of Dustin LeBlanc for penalty wages and attorney fees. For the following reasons, we affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

On June 22, 2020, Dustin LeBlanc ("Dustin") filed a Petition for Unpaid Wages, Penalties, and Attorney[] Fees. Therein, he alleged that he worked for LeBlanc's Automotive & Glass Center, LLC ("LeBlanc's") from August 1, 2005, through October 21, 2017, and that he formally quit his employment on October 30, 2017. LeBlanc's is owned by Dustin's father, Randy LeBlanc ("Randy"). According to Dustin, he was paid wages in the amount of $1,000.00 per week as of the date he left LeBlanc's, but he was not paid for his last full week of work in accordance with La.R.S. 23:631; therefore, Dustin's petition seeks penalty wages and attorney fees in accordance with La.R.S. 23:632.

Randy filed an Answer and Reconventional Demand, as well as a Supplemental Reconventional Demand. He denied the alleged debt owed to Dustin for various reasons including allegations that Dustin stole tools and equipment from Randy and used them for his own business, Dustin stalked Randy between November 2018 and December 2018 and provoked Randy to fight him on August 3, 2018, and Randy and Dustin are on opposite sides of a dispute involving Randy's mother's succession, which has "poisoned" their relationship and caused Dustin to prohibit his children from having a relationship with Randy. Randy further alleged that Dustin's actions constituted "crimes of violence" and "domestic abuse" and necessitated Randy to obtain protective orders against Dustin. According to Randy's Reconventional Demand, he is entitled to damages "in accordance with

[La.Civ.Code art.] 3493.10 and [La.Civ.Code art.] 2315.8," as well as attorney fees and costs.

In response, Dustin filed exceptions of no cause of action, no right of action, and prescription, as well as a motion for sanctions in accordance with La.Code Civ.P. art. 863. The trial court granted Dustin's exceptions of no cause of action and no right of action, and dismissed all claims set forth in Randy's original and amended reconventional demands. Dustin's motion for sanctions was denied.

A bench trial on the merits of Dustin's petition was held April 18, 2022. Therein the parties stipulated that Dustin was owed, but not paid, $1,000.00 in wages for his last week of work at LeBlanc's and that Dustin, through counsel, made a demand for payment as required by La.R.S. 23:632. At issue for trial was whether Randy had "equitable defenses" that justified his failure to pay Dustin the wages that were owed such that he was not liable for penalty wages contemplated by La.R.S. 23:632.

The trial court concluded that Randy failed to sufficiently establish any equitable defenses, and it rendered judgment against Randy and in favor of Dustin for $18,000.00 in penalty wages and $6,815.00 in attorney fees.

Randy appeals[1] and asserts the following assignments of error:

ASSIGNMENT OF ERROR NO. 1:

> The Trial Court erred by failing to recognize that La.[R.S.] 23:631, and La.[R.S. 23:]632 are coercive or penal in nature, and therefore, were to be strictly construed.

ASSIGNMENT OF ERROR NO. 2:

---

[1] We note that the motion for appeal was filed by counsel on behalf of both Randy and LeBlanc's. However, the judgment at issue is against Randy LeBlanc only, and it does not appear that LeBlanc's ever answered the petition or otherwise made an appearance prior to the motion for appeal. Therefore, we will consider only Randy's appeal of the judgment rendered against him.

2

The Trial Court erred by failing to give credence and appropriate weight to equitable defenses presented at trial to Plaintiff's demands.

ASSIGNMENT OF ERROR NO. 3:

The Trial Court erred by failing to consider that the Plaintiff's first and only demand for payment of wages due was two (2) years following Plaintiff's resignation.

ASSIGNMENT OF ERROR NO. 4:

The Trial Court erred in finding that the amount owed was $1,000.00, when the actual amount should have been $787.51, after offset for taxes.

ASSIGNMENT OF ERROR NO. 5:

The Trial Court erred by imposing penalty wages irrespective of the circumstances.

ASSIGNMENT OF ERROR NO. 6:

The Trial Court erred, after accepting evidence that entitled RANDY LEBLANC to credits and offsets, in finding that wages were still owed.

ASSIGNMENT OF ERROR NO. 7:

The Trial Court erred, once evidence of credits and offsets showed that <u>no</u> wages, <u>nor</u> penalty wages were due, in casting Attorney[] Fees and Court costs against LEBLANC'S AUTOMOTIVE AND GLASS CENTER, LLC., et al.[2]

## ANALYSIS

We first note that Randy has failed to brief or provide an argument concerning his third and fourth assignments of error. Therefore, in accordance with Uniform Rules—Courts of Appeal, Rule 2-12.4(B)(4), the third and fourth assignments of error are deemed abandoned and will not be considered. *See Longino v. City of Oakdale*, 21-296 (La.App. 3 Cir. 11/3/21), 332 So.3d 753.

---

[2] We note that the judgment awards attorney fees and costs against only Randy LeBlanc.

The remaining assignments of error generally pertain to whether the trial court erred in its conclusion that Randy failed to sufficiently establish an equitable defense to Dustin's claim for penalty wages and attorney fees under La.R.S. 23:632. Therefore, we will consider these assignments of error together.

"A trial court's findings of fact with regard to whether the plaintiff is entitled to penalty wages cannot be reversed on appeal in the absence of manifest error." *Keiser v. Catholic Diocese of Shreveport, Inc.*, 38,797, p. 6 (La.App. 1 Cir. 8/18/04), 880 So.2d 230, 235.

Louisiana Revised Statutes 23:631(A)(1)(b) states:

> Upon the resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday for the pay cycle during which the employee was working at the time of separation or no later than fifteen days following the date of resignation, whichever occurs first.

"In the event of a dispute as to the amount due under this Section, the employer shall pay the undisputed portion of the amount due as provided for in Subsection A of this Section." La.R.S. 23:631(B).

In addition, La.R.S. 23:632, which imposes liability on an employer for failing to pay wages in certain instances, states:

> A. Except as provided for in Subsection B of this Section, any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages.

> B. When the court finds that an employer's dispute over the amount of wages due was in good faith, but the employer is subsequently found by the court to owe the amount in dispute, the employer shall be liable only for the amount of wages in dispute plus

4

judicial interest incurred from the date that the suit is filed. If the court determines that the employer's failure or refusal to pay the amount of wages owed was not in good faith, then the employer shall be subject to the penalty provided for in Subsection A of this Section.

C. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.

Louisiana Revised Statutes 23:632 "is penal in nature, and, therefore, must be strictly construed in favor of the one receiving benefits under that chapter of the law. Equitable defenses are available, and penalty wages are not to be absolutely imposed." *Newsom v. Global Data Sys., Inc.*, 12-412, 12-413, p. 7 (La.App. 3 Cir. 12/12/12), 107 So.3d 781, 787, *writ denied*, 13-429 (La. 4/5/13), 110 So.3d 595 (internal citations omitted).

A claim for penalty wages under La. R.S. 23:632 may be defeated by an equitable defense. However, it is only "a good-faith, non-arbitrary defense to liability for unpaid wages, i.e., a reasonable basis for resisting liability" which permits a court to excuse the employer from the imposition of penalty wages. Louisiana courts have recognized that an employer's claim of setoff, or compensation, constitutes an equitable defense to a penalty wage claim. This situation may arise when, for instance, the employer seeks setoffs against wages based on damage caused by the employee, . . . or because property of the employer is allegedly being improperly retained by the employee[.]

*Richard v. Vidrine Auto. Servs., Inc.*, 98-1020, pp. 6-7 (La.App. 1 Cir. 4/1/99), 729 So.2d 1174, 1177-78 (internal citations omitted).

"However, when the employer is arbitrary, sets out procedural pitfalls for the employee, or is negligent in failing to pay past due wages, penalty wages will be assessed." *Newsom*, 107 So.3d at 787.

In the instant case, the parties stipulated that Dustin was owed $1,000.00 in past-due wages and that he made a demand for wages as contemplated by La.R.S.

5

23:632.  The demand letter in evidence is dated October 31, 2019.  While Randy agreed that he did not pay the $1,000.00 in wages owed to Dustin, he suggests on appeal that the wages owed should have been offset because Dustin stole a buffer from him when he left LeBlanc's, Dustin ordered supplies for his new business using Randy's account with a supplier, Dustin caused a check from State Farm to be written to his new business instead of to LeBlanc's, Dustin damaged a trailer owned by Randy, and/or because of Randy's belief that Dustin stole tools and equipment belonging to him when he left LeBlanc's.

Randy testified that while Dustin was working for LeBlanc's, Dustin broke a high-speed buff and orbital buffer, replaced it, and then stole the replacement when he left LeBlanc's.[3]  Randy further testified that Dustin damaged the original buffer through use and wear and tear.  In response, Dustin testified that he did not break the buffer he originally used while working at LeBlanc's.  Instead, he explained that the original buffer did not have the variable speeds he needed to do his job, and therefore he purchased a new buffer using his own funds.  A receipt of his purchase was accepted into evidence.

Randy also testified that Dustin ordered supplies from Outwater Plastics Industries, Inc. for himself using Randy's business account, and that the supplies were shipped to Dustin's wife's place of employment.  A receipt from Outwater Plastics dated October 23, 2017, in the amount of $37.00, was submitted into evidence, and showed it was paid with a credit card in Dustin's name.  Randy also admitted that Dustin paid for the supplies with Dustin's own credit card, and Dustin

_____

[3] At trial, Randy's counsel attempted to submit into evidence an unauthenticated document purporting to establish the replacement cost of the allegedly stolen buffer, but the trial court refused to accept it into evidence.  The document was proffered; however, Randy has not challenged on appeal the trial court's exclusion of this document from evidence.

similarly testified that he paid for the supplies with his own credit card. Dustin further explained that at the time of the purchase, he was working for LeBlanc's, so he was authorized to purchase supplies.

Randy also testified in defense of Dustin's claim, that Dustin caused a check from State Farm in the amount of $740.00 for a job completed by LeBlanc's to be diverted to Dustin's new business. Randy explained that when he discovered this, LeBlanc's submitted an invoice to State Farm. An invoice to State Farm dated October 19, 2017, was accepted into evidence. Randy admitted that State Farm paid the invoice but asserted that Dustin's actions cost him a thirty-day delay in payment. Dustin testified, however, that he did not divert work from LeBlanc's to his business and that he did not know one way or the other whether he received a check from State Farm for $740.00.

Also in defense of Dustin's claim for penalty wages, Randy testified that Dustin borrowed his trailer and damaged it when he blew out a tire. He testified that the trailer belonged to him personally, not LeBlanc's. Randy told the trial court that this occurred "probably" in October 2017, right before Dustin left LeBlanc's, and that he let Dustin borrow the trailer because he was building a house. When asked how Dustin damaged the trailer, Randy stated that "he was hauling heavy equipment in it I guess[,] and it blew out." Randy further admitted that he did not know whether Dustin intentionally damaged the trailer because he was not there when it happened, but that Dustin brought the trailer back to him damaged. Randy also submitted estimates dated November 2020 totaling over $1,200.00 to repair the trailer's tire and fender, but he testified that he did not have any proof that these were paid.

7

With respect to the trailer, Dustin testified that he did not intentionally damage it, that the tire did not go flat when he was using it, and that the trailer was "fine" when he returned it to Randy.

Randy also testified that he believed Dustin stole other property belonging to him, and that he made two separate reports to the police regarding this property.[4] He stated that he filed a report in St. Martin Parish pertaining to a red windshield rack that he claims he saw Dustin with. He explained that the rack was thirty years old and that a similar red rack could not be purchased anywhere. He also testified that he made a police report in Lafayette Parish regarding a jack and other equipment he believed was his, but that Dustin had taken to his new business. Randy further testified that he was not aware of whether Dustin had been arrested in connection with the reports he made, and that he had not personally seen Dustin with the jack at issue.

Dustin testified that he did not steal anything from Randy. He explained that while his personal tools and LeBlanc's tools were stored together because the shop was small, he knew which tools were his, and he left with only the tools that he had purchased with his own money. Dustin further testified that he gave a statement to the Lafayette police department and was never charged with anything. He also submitted into evidence a letter dated September 16, 2020, that he received from the St. Martin Parish District Attorney stating that the office had declined prosecution of a charge of theft for less than $1,000 for an alleged offense dated February 2018.

---

[4] Randy's counsel attempted to introduce into evidence unauthenticated police reports purportedly reflective of his claims to police; however, the trial court refused to accept them into evidence. Counsel proffered the reports but does not challenge on appeal the trial court's exclusion of them from evidence.

We find no manifest error in the trial court's conclusion that Randy failed to establish a good faith equitable defense to payment of wages otherwise owed to Dustin. Randy admitted that Dustin paid for the buffer, as well as the supplies purchased from Outwater Plastics with Dustin's own funds; therefore, the trial court did not err in rejecting Randy's claims pertaining to these items.

Further, according to Randy, State Farm paid LeBlanc's the amount owed, although it was thirty-days late; however, Dustin denied any effort to divert money to his business, and this issue was resolved when Randy was paid by State Farm well before Dustin made a formal demand for wages owed. Therefore, the record supports the trial court's rejection of this issue as a good faith equitable defense to Dustin's wages claim.

Moreover, the trailer was owned by Randy personally, rather than by LeBlanc's, and Dustin testified that he did not damage it or otherwise return it damaged. Dustin similarly testified that he did not take any tools or equipment belonging to Randy and/or LeBlanc's, he was not prosecuted for taking anything from Randy, and there is no evidence in the record to support Randy's allegations other than Randy's own testimony that he believed Dustin took his tools and/or equipment. Therefore, we cannot say that the trial court erred in concluding that Randy failed to establish that issues pertaining to the trailer, tools, or equipment created a good faith dispute over the amount of wages Randy owed Dustin.

Randy also argues on appeal that the trial court incorrectly applied the applicable law and refused to consider evidence "of [his] good faith behavior" in making its decision. In support of this argument, Randy points out that during trial, he, through counsel, noted that he was not trying to "get" the items he reported to the police as allegedly having been stolen by Dustin, or otherwise recover damages

for any stolen items, but rather "he want[ed] to show that was his perception of what was happening to him is the reason why he had such -- why it had been so long in taking care of the matter altogether." Randy then takes issue with the trial court's response indicating that Randy could not keep Dustin's paycheck just because he thought he owed him money with respect to the allegedly stolen items, and he contends that La.R.S. 23:632(B) allows an employer to withhold an employee's paycheck if there is a bona fide dispute and the action was done in good faith.

However, as noted above, the record supports the trial court's finding that Randy failed to establish a good faith defense, or reasonable basis for resisting liability, for reasons pertaining to the allegedly stolen tools and equipment. The only evidence presented was Randy's own self-serving and unsupported testimony regarding his beliefs. This was countered by a letter indicating that Dustin was not being prosecuted for theft charges, as well as Dustin's testimony that he did not steal anything, but rather only left with the tools that were his. We find no manifest error on the part of the trial court in not accepting Randy's mere belief that Dustin stole something as a good faith defense or reasonable basis to resist payment of Dustin's wages.

We therefore affirm the trial court's judgment.

## DECREE

For the reasons set forth above, we affirm the trial court's judgment rendered in favor of Dustin LeBlanc and against Randy LeBlanc. Costs of this appeal are assessed to Randy LeBlanc.

**AFFIRMED.**