ROLAND L. BELSOME, Judge.
| iThis appeal is taken from two lower court judgments. The Defendants R.J. Reynolds Tobacco, et al, are challenging the trial court’s rulings in two declaratory judgments.[1] For the reasons that follow we affirm.

Procedural History

This case has an extensive procedural history beginning on May 24, 1996, when the lawsuit was filed on behalf of Gloria Scott and Deania Jackson. In 1997, a class was certified to include all Louisiana residents who smoked on or before May 24, 1996, and who desired to participate in a monitoring and/or cessation program. Through the course of litigation this Court authored two significant opinions, Scott 1[2] and Scott II[3]

\9Scott I

A jury trial was conducted in two phases (liability and damages) over approximately four years: In Phase I, the jury found that the Defendants’ actions “increased the risk of harm to the entire class of Louisiana smokers and determined the remedy to be cessation assistance.” Scott, 2004-2095, p. 11 (La.App. 4 Cir. 2/7/07), 949 So.2d 1266, 1276. In Phase II, the jury returned a special verdict form accepting all of the Plaintiffs’ demands, which included a twelve component smoking, cessation program funded by the Defendants, but limiting the program to a ten year period (Plaintiffs had requested a twenty-five year program) and awarded more than $591 million. Id, at 38, 949 So.2d at 1282. The smoking cessation program was comprised of the following components: (i) reimbursement of smoking-cessation-related medication; (ii) telephone quit lines; (iii) health system interventions: (iv) intensive cessation programs; (v) development of cessation capacity; (vi) community cessation programs; (vii) marketing and education; (viii) evaluation of program effectiveness; (ix) local centers of cessation excellence; (x) development of program standards; (xi) monitoring and auditing; and (xii) training and technical assistance. On July 30, 2004, the trial court entered a judgment against the Defendants on the Phase I and Phase II jury verdicts.[4] The *626 Defendants appealed.
laOn February 7, 2007, this Court affirmed' in part and amended in part the trial court’s judgment.[5] Scott /, 2004-2095, p. 39, 949 So.2d 1266, 1290. This Court affirmed the jury’s findings of liability based on fraud and conspiracy as to those class members whose claims accrued before the enactment of the Louisiana Product Liability Act in 1988, but reversed the verdict as it pertained to members whose injuries accrued after'1988. Scott I, 2004-2095, p. 10, 949 So.2d at 1275-76. This Court also affirmed the jury’s awards of damages for Components One through Four, but found that Components Five through Twelve were not legally | recoverable. Scott I, 2004-2095, pp. 33-36, 949 So.2d at 1287-89. This Court then remanded the matter to the trial court.
Following remand, the trial court entered an amended judgment on July 21, 2008, in accord with the dictates of this Court ⅛ Scott /, The trial court judgment ordered that the Defendants fund the four components of the smoking cessation program, as follows:
1. Reimbursement of smoking:cessation related medication $101,554,050.00
2. 3. Telephone quit lines Health system intervention $33,367,760.00 $76,165,537.00
4. Intensive cessation programs $39,896,233.00
The above four items totaled $250,983,580 *627 plus an additional five percent administrative fee of $12,549,179 was added.[6] Id. This judgment, however, apparently failed to account for Scott I’s reduction of the eligible participants to only those who started smoking before 1988.[7] Defendants appealed again.

Scott II

On April 23, 2010, this Court amended, and as amended; affirmed the trial court’s July 21, 2008 judgment. Scott v. Am. Tobacco Co., Inc. (“Scott II”), 2009-0461, (La.App. 4 Cir. 4/23/10), 36 So.3d 1046.[8] In reaching its decision, the Scott II Court estimated that 210,000 smokers could be eligible to participate in the cessation program and found that the median costs of approved cessation methods would be $153. Id. at p. 20, 36 So.3d at 1059. This Court then calculated the | ./‘amount due by the tobacco companies to fund the court-approved smoking-cessation program in an amount which does not exceed the reasonable cost if all eligible beneficiaries chose to participate, applying the annual cost per eligible class member of $153, the median cost of service for cessation methods.” Id. As a result, the Scott II Court reduced the jury’s award of damages finding that the “amount necessary to fund the Scott I approved smoking cessation program for the remaining eligible beneficiaries was $230,038,560 plus the stipulated five [percent] administrative fee of $11,501,928 for a total award of $241,540,488.” Id. at p. 21, 36 So.3d at 1059. This Court ordered that amount plus accrued judicial interest be. deposited into the registry of the Civil District Court for the Parish of Orleans. This Court further noted that “the trial court, as. it proceeds to implement the program, needs ‘[flexibility rather than rigidity’ in making ‘adjustment and reconciliation between the public interest and private needs as well as between competing private claims.’ ” Id. at p. 21, 36 So.3d at 1059 (citing Hecht Co. v. Bowles, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754 (1944)). The Court further stated that “[b]ecause the amount ordered to be paid is not for the use of particular individuals but in order to fund a court-supervised program, which is in the nature of a trust fund, its oversight is a fiduciary obligation of the court.” Id. As a result, it was ordered that within ninety days of its deposit in the court’s registry, after deduction for the first year’s operating expenses of the smoking cessation program, the “balance of the funds are to be transferred by the court to a federally insured depository institution organized under the laws of this state or of the United States” and the funds be held in an “interest-bearing account.” Id. at pp. 22, 36 So.3d at 1059.

yPost Scott II

The trial court adopted this Court’s opinion in Scott II and entered final judgment on June 27, 2011.[9] Subsequently, on *628 July 26, 2011, the trial court established a Smoking Cessation Trust (the Trust). On that same date, a trust agreement was established and three individuals were appointed to serve as trustees to oversee the program.
On August 1, 2011, the Defendants deposited the final judgment amount of $278,720,790.55, the total award plus interest, into the registry of Civil District Court for the Parish of Orleans.[10] At some point thereafter, the trial court ordered that the money in the court’s registry be transferred to the Trust.
In May of 2012, in connection with coming to a resolution concerning class counsel’s claim for attorney’s fees, the Defendants agreed to limit their claim to surplus funds to 50% of the surplus funds at the end of the program. The Defendants claim that this is when they first became aware of the creation of the Trust and the trust agreement.
The Smoking Cessation Program was initiated in July of 2012. The Defendants contend that since that time they have received no reports or ^expenditures despite the trial court’s statement in October of 2011 that “[rjeports regarding the establishment and operation of the Smoking Cessation Trust [ ] and the management of the [Scott Trust Fund] will be provided [to] the parties and the public-at-large in conformity with Louisiana law by fling the appropriate documents into the record of this case.”
On April 24, 2015, the Defendants wrote a letter to the Board requesting information and reports to confirm the balance of the fund, the interest earned, and that the expenditures were being made in compliance with Scott I and Scott II. In response, the Board filed an application for instructions from the trial court regarding the trust instrument and the interpretation/administration thereof. See La. R.S. 9:2233 (providing that a “trustee ... in an ordinary or a summary proceeding may apply to the proper court for instructions concerning the trust instrument, the interpretation of the instrument, or the administration of the trust”). Specifically, the Board requested instructions concerning:
1. Whether the Defendants are beneficiaries pursuant to the Trust documents and Scott I/Scott II opinions;
2. Whether the Board is obligated to produce financial documents to the Defendants as requested in the April 25, 2015 letter;
3. Whether the Board can direct program funds to dedicated to a certain year to be used in subsequent years for any purpose reasonably designed to implement the furtherance of the program; and
4. Whether the Board can direct the judicial interest accrued by the original judgment and interest income earned on the corpus of the Trust for the use and benefit of the cessation program, including the use of such interest and income for all modalities of the program including administration.
The Board’s application for instructions came for hearing before the trial court on July 21, 2015, and the trial court took the matter under advisement. On | s July 24, 2015, the trial court issued a judgment and *629 reasons for judgment, which found that the Defendants were “not beneficiaries of the Smoking Cessation Trust;” that the Board is “not obligated to produce financial, accounting and business related records/documents of the Trust” to the Defendants; that the Board can “direct program funds dedicated to a certain year of the ten year program to be used in subsequent years for any purpose reasonably designed to implement the furtherance of the program;” and that the Board can “direct the judicial interest accrued by the Judgment and the interest income earned on the corpus of the Trust for the use and benefit of the cessation program, including the use of such interest and income for all modalities of the program including administration.”
Thereafter, the trial court considered the Defendants’ Application for Declaratory Judgment and issued a judgment that read:
This matter was submitted to the court on August 4, 2015 on the pleadings, exhibits and the argument of counsel at the July 21, 2015 hearing.
For the reasons assigned on July 24, 2015 and considering the above;
IT IS ORDERED, ADJUDGED AND DECREED that;
Defendants are not principal or conditional beneficiaries of the trust established to administer the cessation fund, and
Defendants are not entitled to any reporting on cessation program expenditures, and
The Smoking Cessation Trustees are not obligated to produce any records to Defendants
The expenditure of interest has been ruled upon in this Court’s judgment dated July 24, 2015.

Assignments of Error

On appeal, the Defendants assert that the district court erred as follows:
|31. In ruling that the' Defendants are not entitled to any information about how the funds are being spent, thereby failing to honor the Defendants’ undisputed interest in any surplus' funds at the end of the 10-year program;
2. In ruling that the Trustees may direct program funds for any purpose reasonably designed to implement the furtherance of the program; and
3. In ruling that the Trustees can spend interest to exceed the 5% administrative cap.

Discussion

In reviewing the Defendants’ first assignment of error, this Court must answer the threshold question of whether the Defendants are beneficiaries of the Trust. The Defendants argue that because any surplus remaining after the ten-year program “inure” to the “tobacco companies,” they are conditional beneficiaries. See La. R.S. 9:1725(4) (providing that a principal beneficiary is “a beneficiary presently, conditionally, or ultimately entitled to principal”). Moreover, La. R.S. 9:2089 provides that a “trustee shall give to a beneficiary upon his request at reasonable times complete and accurate information as to the nature and amount of the trust property, and permit him, or a person duly authorized by him, to inspect the subject matter of the trust, and the accounts, vouchers, and other documents relating to the trust.” The Defendants thus contend as beneficiaries they have the right to receive information about how the Trust is spending funds.
Although the Defendants claim to be a beneficiary of the Trust by way of Scott II, the precise language on the issue in that opinion reads:
*630 The funds transferred shall be deposited in an interest-bearing account. See La. R.S. 39:1231 B. This procedure will maximize the interest earned on the funds, which will inure either to the benefit of the smoking-cessation program or, if there are surplus funds at the conclusion of the program, to the tobacco companies.
We also, by this judgment, specially reserve unto the tobacco companies at the termination of the ten-year smoking cessation program \wthe right to assert its claims to any unspent or surplus funds. See, e.g., La. R.S. 13:4232. Scott II, 2009-0461, p. 22, 36 So.3d at 1060 (emphasis added).
The language clearly provides that the Defendants’ right to assert a claim will exist only after the termination of the Trust. That is evident due to Scott II ⅛ reference to La. R.S.18:4232. That statute provides for exceptions of res judicata and states that a “judgment does not bar another action by the plaintiff: ... [w]hen the judgment reserved the right of the plaintiff to bring another action.” La. R.S.13:4232(A)(3). We interpret Scott II as giving the Defendants “only the ability to seek redress” at the end of the program by allowing them an action to pursue the remaining funds, if any exist, and preventing the Defendants’ claim from bring precluded by res judicata.
Additionally, under La. R.S. 9:1801 a “beneficiary is a person for whose benefit the trust is created.” The Court in Scott II specifically stated that the beneficiaries of the damage award are “the multitude of individuals in Louisiana who began their smoking habit before September 1, 1988.” Scott II, 2009-0461, p. 15, 36 So.3d at 1055-56. Also, La. R.S. 9:1802 provides that a “beneficiary must be designated in the trust instrument,” and the trust agreement defines “class beneficiaries” as “all Louisiana residents who desire to participate in the program designed to assist them in the cessation of smoking from the class member alleges that he or she commenced smoking cigarettes before September 1,1988.”
Scott II and the Trust instrument support the trial court’s ruling. Accordingly we find that the Defendants are not beneficiaries of the Trust. Therefore, the Defendants have no rights under La. R.S. 9:2089.
The Defendants also claim that the trial court acknowledged that they should receive reports concerning the program funds in its reasons for judgment on a lumotion to clarify in October 2011, which stated that “[r]eports regarding the establishment and operation of the Smoking Cessation Trust [ ] and the management of the [Scott Trust Fund] will be provided [to] the parties and the public-at-large in conformity with Louisiana law by fling the appropriate documents into the record of this case.” However, reasons for judgment only set forth the basis for the court’s holding and are not binding. Melton v. Gen. Elec. Co., 625 So.2d 265, 268 (La.App. 4th Cir.1993); Veal v. Am. Maint. & Repair, Inc., 2004-1785, p. 7 (La.App. 1 Cir. 9/23/05), 923 So.2d 668, 673; Dufresne v. Dufresne, 10-963, p. 6 (La.App. 5 Cir. 5/10/11), 65 So.3d 749, 754. Moreover, the reasons for judgment state that reports will be produced according to Louisiana law, and the Trust Code mandates a trustee to furnish information upon the beneficiary’s request. La. R.S. 9:2089. Again, because neither this Court nor the Trust instrument designates the Defendants as ■ the intended beneficiary, the Board is not required to provide financial information concerning the use of funds.
In accordance with this Court’s ruling, the Defendants do not have a right for review of the remaining issues. Thus, *631 those assignments of error are deemed moot.
AFFIRMED
LEDET, J., concurring with reasons.

.On July 24, 2015 the trial court rendered a judgment and order addressing the Board of Trustees of the Smoking Cessation Trust's request for instructions. From that judgment the Defendants took a'writ. On August 31, 2015, the trial court issued a "Judgment on Defendants’ Application for Declaratory Judgment” basically restating its ruling in the July 24, 2015 judgment. Still within the proper time delays, the Defendants filed a motion for devolutive appeal from both judgments. The appeal was lodged and was subsequently consolidated with the previously filed writ.

. Scott v. Am. Tobacco Co., Inc. (“Scott I"), 2004-2095 (La.App. 4 Cir. 2/7/07), 949 So.2d 1266.

. Scott v. Am. Tobacco Co., Inc. (“Scott II"), 2009-0461, p. 1 (La.App. 4 Cir. 4/23/10), 36 So.3d 1046.

. The July 30, 2004 judgment stated, in relevant part:
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Defendants ... are liable, jointly, severally, and in solido, to the certified Plaintiff Class, for funding the cost of a court supervised smoking cessation *626 program including the establishment, implementation and administration of the program set out below;
IT IS FURTHER ORDERED THAT the court-supervised program will consist of a comprehensive smoking-cessation program, which will include the following components; (i) reimbursement of smoking-cessation-related medication; (ii) telephone quit lines; (iii) health system interventions: (iv) intensive cessation programs; (v) development of cessation capacity; (vi) community cessation programs; (vii) marketing and education; (viii) evaluation of program effectiveness; (ix) local centers of cessation excellence; (x) development of program standards; (xi) monitoring and auditing; and (xii) training and technical assistance. IT IS FURTHER ORDERED THAT the court-supervised comprehensive cessation program will, subject to the supervision of the Court, b.e administered by a third-party administrator appointed by the Court which is hereby authorized to perform whatever acts are necessary to implement the cessation program described herein;
DEFENDANTS ARE HEREBY ORDERED to deposit Five Hundred and Ninety-One Million, Three Hundred and Forty-Two Thousand, Four Hundred and Seventy Six Dollars and Fifty-Five Cents ($591,342,-476.55), together with judicial interest thereon from the date of judicial demand until paid, into the Registry of the Civil
District Court for the Parish of Orleans in trust for the Plaintiff class, for the funding of the court supervised comprehensive cessation program;
[[Image here]]
THE COURT will retain jurisdiction over this case with respect to the establishment, implementation, supervision, and administration of the court-supervised fund, court-supervised cessation program and to resolve all other outstanding issues, including, but not limited to, the assessment of court costs and/or attorney’s fees and for any subsequent phase of this trial deemed necessary in accordance with Louisiana Code of Civil Procedure Article 593.1.

. Phase II yielded a special verdict assigning monetary damages for each year of the term of the award and for each component of the program. However, the trial judge issued a judgment based not only on the jury's findings, but also on his own findings of fact, equitable considerations, and applicable principles of equity and law. This Court denounced that approach and recognized the solemn role of the jury as fact-finder, noting that there is no provision in Louisiana law for a judge to render written reasons for judgment in a jury trial and that when the jury returns a special verdict, the judge is bound to render a judgment in conformity therewith, Scott I, atp. 5, 949 So.2d at 1273.

. The trial court also ordered post-judgment interest on the entire amount from June 30, 2004, which was the date of its earlier judgment appealed from in Scott I.

. "[T]he intended beneficiaries of the damage award are the multitude of individuals in Louisiana who began their smoking habit before September 1, 1988.”, Scott II, 2009-0461, pp. 14—15, 36 So.3d at 1055-56..

. This Court also found that the trial court should have awarded post-judgment interest from the date of its amended judgment (July 21, 2008), rather than its first judgment (July 30, 2004). Scott II, 2009-0461, pp. 16-23, 36 So.3d at 1055-60.

.This judgment stated:
Considering that the defendants' application in this matter for Writ of Certiorari to the United States Supreme Court was denied this-date and therefore the decision in Case 2009-CA-0461, Court' of Appeal, Fourth Circuit, State of Louisiana dated April 23, 2010 in the matter entitled Gloria *628 Scott, et al versus American Tobacco Company, Inc., et al. is now final.
IT IS ORDERED that the opinion of the Court of Appeal, Fourth Circuit, State of Louisiana in the matter numbered 2009-CA-0461, titled Gloria Scott al versus Amer-lean Tobacco Company. Inc., et al., dated April 23, 2010, be and it is hereby made the judgment of this Court.

. The interest was $37,180,302.55.