| | | |
|---|---|---|
| **MASHANNA GALLO** | * | **NO. 2021-CA-0313** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **GREENPATH INTERNATIONAL, INC.** | * | **FOURTH CIRCUIT** |
| | * | |
| | | **STATE OF LOUISIANA** |
| | * * * * * * * | |

APPEAL FROM
FIRST CITY COURT OF NEW ORLEANS
NO. 2020-00443, SECTION "B"
Honorable Marissa A Hutabarat,
* * * * * *
**Judge Paula A. Brown**
* * * * * *

(Court composed of Judge Edwin A. Lombard, Judge Roland L. Belsome, Judge Paula A. Brown)

**BELSOME, J., CONCURS IN THE RESULT**

Natalie K. Mitchell
Scott L. Sternberg
Marcia Suzanne Montero
STERNBERG NACCARI & WHITE, LLC
935 Gravier Street, Suite 2020
New Orleans, LA 70112


COUNSEL FOR PLAINTIFF/APPELLEE


James M. Williams
Inemesit U. O'Boyle
Matthew J. Pertuit
CHEHARDY SHERMAN WILLIAMS MURRAY RECILE STAKELUM & HAYES, LLP
One Galleria Boulevard, Suite 1100
Metairie, LA 70001

Martins I. Imudia
ATTORNEY AT LAW
4002 W. Waters Avenue, Suite 5
Tampa, FL 33614


     COUNSEL FOR DEFENDANT/APPELLANT


**AFFIRMED**
**DECEMBER 16, 2021**

**EAL**

**PAB** This appeal arises out of a claim of unpaid wages pursuant to the Louisiana Wage Payment Act ("LWPA"), La. R.S. 23:631 *et seq.* Defendant/Appellant, Greenpath International, Inc. seeks review of the city court's September 21, 2020 judgment that awarded Plaintiff/Appellee, MaShanna Gallo, unpaid wages and vacation leave and assessed a penalty. For the reasons set forth below, the city court's judgment is affirmed.

## FACTS AND PROCEDURAL HISTORY

On January 30, 2019, Ms. Gallo, entered into an employment contract with Greenpath International, Inc. ("GI"). GI is a nonprofit corporation that provides services for persons suffering from substance abuse and mental health issues. GI had a contract with the United States government, wherein GI provided services to clients who were in the federal probation and parole program. GI hired Ms. Gallo as the Coordinator of Federal Probation and Parole Substance Use Program/MHP to oversee reporting to the federal probation and parole program. The contract was a two-year term of employment. One of the duties of the coordinator was to maintain the federal probation and parole files that were kept locked. If a parolee failed to appear for a required drug test or failed a required drug test, GI was

contractually required to submit this information to the parole office at the United States District Court for the Eastern District of Louisiana within twenty-four (24) hours.

On July 19, 2019, Ms. Gallo forwarded an email to GI, informing GI that she was resigning from her position effective immediately as of the date of her writing. The email further provided that "[p]er page 1, item 3 of my contract, I am aware that I will be charged $219.75 [for] the Duluth Model Training I attended June 18-20, 2019 that the company paid for." In addition, the resignation letter provided:

> [C]alculations based on the system provided per page 40 of the Greenpath Handbook, I have accrued 3.34 hours per pay period totaling to 6.68 hours a month. Which is equal to 36.74 hours or 4.59 days from the beginning of my employment (January 30, 2019-July 19, 2019). Also, from this current pay period (July 10, 2019-July 25, 2019), I have worked a total of 56 hours from July 10, 2019-July 19, 2019. The company keys (1 front bar door-silver key and black tab, 1 front door gold key, 1 hallway door gold key-red tab, 1 gold key to the Federal Substance Use Coordinator office doorblue tab, 1 silver file cabinet key-black tab), is already in the mail to Greenpath including a hard copy of my resignation letter.

After receipt of Ms. Gallo's resignation letter, on July 26, 2019, GI forwarded Ms. Gallo a letter, which stated, in pertinent part:

> Based on your letter of resignation, we wish to inform you that you . . . deprived the agency of gaining access to clients' files in your office for two days Monday, July 22, 2019, and Tuesday, July 23, 2019, thereby hindering services for clients during the mentioned dates. According to your letter of employment that was mutually signed and agreed upon on January 30, 2019, by you, it stipulates the following itemized conditions:
>
> > *1. You agree to remain with the company (Greenpath International Inc.) for the duration of two years starting from January 30. [sic] 2019 to January 30. [sic] 2021. After that, this contract is subject to future review depending on the growth/progress of the Company, as well as your performance.*

*2. You agree that if you leave the company (Greenpath International Inc.) before the end of contracted date of January 30. [sic] 2021, you will be held liable and responsible for any monies for training incurred during your employment. . . .*

Therefore, [based on] your termination letter dated on July 19, 2019, [you] have breached the terms and conditions of your employment and we have no other options other than implementing the condition 1 and 2 set forth by the mutually signed employment letter.

That said, you owe Greenpath International Inc. the following for breaching your contract and training incurred as stipulated in your contract which will be deducted from your July 31, 2019, pay check [:]

*1. Three (3) days Domestic Violence Intervention Program: Duluth Model Training from June 18-20. 2019[.] Your hourly rate $20 X 8 hrs/day = $160.00 X 3 days (minus)- taxes 42.86 = $437.14*

*2. Registration for Duluth Model training $219.75.*

*3. Two (2) days pay (Monday[,] July 22 [,] 2019 and Tuesday[,] July 23[,] 2019) = $160 X 2 days = $320 for hindering access to Federal Probation and Parole clients files and services in your office that you coordinate because you took the keys that access the files, which you mailed back through USPS as indicated in your itemized letter to us. Grand Total of deductions = $437.14- $219.75 -$320.00 =$976.89.*

\* \* \*

*5. Hours worked in the office before resigning for 07/31/2019 payroll = 54hrs 45 minutes =$1,095.00*

*6. Your total pay after deductions $1,095 - 976.89 payroll = $118.11*

*7. Your pay check for July 31. 2019 payroll after all your deductions is $118.11 (one hundred, eighteen and eleven cents) for breaching your contract.*

GI paid a final paycheck to Ms. Gallo in the amount of $109.07.

Ms. Gallo, through her attorney, sent a demand letter to GI in October of 2019, seeking damages for unpaid wages in the amount of $1095.00 (minus

applicable taxes); accrued unused vacation pay, equaling 36.74 hours at her hourly rate of $20.00/hour for a total of $734.80 (minus applicable taxes); attorney's fees; and court costs. After receiving no response to her demand letter, on January 21, 2020, Ms. Gallo filed a petition in city court, asserting a claim for unpaid wages.

In its answer to the petition, GI affirmatively plead all of the provisions of the employment contract between GI and Ms. Gallo. GI further alleged that Ms. Gallo owes GI reimbursement for training costs it expended on her behalf.

A trial was held in city court on July 30, 2020. During his testimony, Dr. Ernest Airhia, CEO and President of GI, attempted to explain how GI arrived at the payment of $118.00, as outlined in GI's letter, to be paid to Ms. Gallo, stating:

> Yes, we -- the calculation was very simple, that the two days, which was Monday and Tuesday, (unintelligible) will not provide the services to the federal probation and parole because of the key. We didn't have the key because she went and post it from the post office. So we had to subtract those two days we couldn't provide no services and -- subtract those two days of pay plus the Duluth Model, that's how we come up with the whole amount.

Ms. Gallo testified that she worked full-time for GI, forty (40) hours per week at $20 an hour. She further testified that upon her resignation, she was entitled to payment of $1,120 for wages and $832.20 for the accrued vacation time; yet, she said, her final paycheck was approximately $109.00.[1] Dr. Airhia claimed that he had no knowledge why Ms. Gallo's final check was $109.07 instead of $118.00.

After taking the matter under advisement, the city court judge issued a judgment in favor of Ms. Gallo, awarding $1,120.00 (unpaid wages), $832.00 (accrued, unpaid vacation), $14,400.00 (ninety-day penalty wages), $7,500.00

---

[1] Ms. Gallo introduced as an exhibit, a copy of her bank statement, reflecting a direct deposit from GI in the amount of $109.07 on July 31, 2019, which was admitted into evidence.

(attorneys' fees), and costs.  In its reasons for judgment, the city court rejected GI's

argument that it was entitled to a setoff of the training expenses, writing:

> Greenpath in its defense, alleged that certain training costs were deducted as offsets from the plaintiffs last check.  Louisiana law is clear that it is against public policy to take a setoff unless the setoff is for specific things such as loans, damages caused by an employee, lost equipment, uniforms, over-payment from a previous paycheck, or property that is being improperly retained by the employee. *See Newsom v. Global Data Systems, Inc.* (La. App. 3 Cir, 12/12/12), 107 So.3d 781, *writ denied*, 110 So.3d 595. There was no testimony proving any of these factors.

This appeal by GI followed.[2]  However, before addressing the merits of GI's

assigned errors, we will first consider the two (2) procedural issues raised by Ms.

Gallo.

## PROCEDURAL ISSUES

In her brief to this Court, Ms. Gallo seeks dismissal of the appeal, asserting

that the appeal was untimely filed, and GI's appellate brief is not in conformity

with the Louisiana Uniform Rules, Courts of Appeal.

### I. Timeliness

It is well-settled law that an appellate court lacks jurisdiction over an appeal

absent a timely filed motion for appeal. *Sens v. Plaisance*, 20-0382, 2020 WL

4692882, at *1 (citing *Joseph v. Egan Health Care Corp.*, 19-0010, p. 3 (La. App.

5 Cir. 5/6/19), 273 So.3d 459, 462).  Louisiana Code of Civil Procedure Article

5002 provides:

> A. An appeal from a judgment rendered by a city court or a parish court may be taken only within ten days from the date of the judgment or from the service of notice of judgment, when such notice is necessary.
> B. When an application for new trial is timely filed, however, the delay for appeal commences on the day after the motion is denied,

---

[2] This Court, *sua sponte*, issued a rule to show cause why the appeal should not be dismissed as untimely.  GI filed a response.  The merits of the untimeliness issue were deferred to the appeal.

or from service of notice of the order denying a new trial, when such notice is necessary.

Applying these principles to the case *sub judice*, following trial, on October 12, 2020 and October 30, 2020, GI filed, in the city court, a notice of intent to appeal and a motion for new trial, respectively. In turn, on December 9, 2020, Ms. Gallo filed a motion to dismiss GI's notice of intent to appeal the September 21, 2020 judgment and motion for new trial. The matter came for hearing on January 7, 2021. At the conclusion of the hearing, the city court granted the motion to dismiss the notice of intent to appeal and denied the motion to dismiss the motion for new trial filed by Ms. Gallo. In addition, the city court granted GI's motion for new trial based on the timeliness of the appeal, and GI was granted leave to file a new notice of intent to appeal. The city court issued reasons for the judgment, explaining that due to a typographical error, GI was never served with the notice of judgment.[3] Thus, the delays for filing a notice of appeal had not commenced.[4]

---

[3] "Reasons for judgment only set forth the basis for the court's holding and are not binding." *Scott v. Am. Tobacco Co.*, 15-1352, p. 11, (La. App. 4 Cir. 5/25/16), 195 So.3d 624, 630.

[4] The city court's reasons for judgment read, in pertinent part:

> On July 30, 2020, this matter came before the Court for trial. After taking the matter under advisement, the Court rendered its reasons for judgment on September 21, 2020. . . .
>
> On that same day, pursuant to La. Code Civ. Proc. Art. 1913, the clerk mailed a notice of judgment to counsel for parties. The address used for Defendant's counsel included an incorrect suite number. Due to the typographical error, Defendant's counsel did not receive the notice of judgment and avers that to date, he has yet to receive such notice.
>
> Although he did not receive the notice of judgment, Defense counsel learned of the judgment against his client, and on October 12, 2020, filed a Notice of Intent to Appeal and Request for Return Date Pursuant to Rule 4.3 ("Notice of Appeal"). The Notice of Appeal did not raise the improper service issue of the September 21, 2020 judgment. On October 20, 2020, Judge Nadine Ramsey signed the Order included in Defendant's Notice of Appeal ("Appeal Order") and in the provided blank spaces on the Appeal Order for the return date. Judge Ramsey wrote "as prescribed by law." Presumably, the handwritten notation "as prescribed by law" was in reference to the return date for filing with the Court of

6

We find no error in the city court's judgment.  Thus, GI's appeal was timely filed.

## II. *Failure to Conform the Louisiana Uniform Rules, Courts of Appeal*

Ms. Gallo complains that GI's brief does not conform, in several instances, with the Louisiana Uniform Rules, Courts of Appeal.   Ms. Gallo argues that

---

Appeal, as such date was to be set according to the relevant legal provisions. . . . . The use of the word "prescribed" clearly caused confusion as to whether the appeal was denied or not, especially when combined with the fact that the Appeal Order had no stamp or notation indicating the appeal was denied and no language concerning the amount of security required to perfect the appeal if indeed it was granted. Furthermore, there is no indication in the record that the clerk prepared and sent notice of a cost estimate pursuant to La. Code Civ. Proc. Art. 2126.

On October 30, 2020, Defendant filed a Motion for New Trial ("Motion for New Trial") in which the Defendant was seeking a reconsideration of what was believed to be a denial of the Notice of Appeal, and not a new trial. Due to the belief that the appeal had been denied. Defendant never followed through with perfecting the appeal.

\* \* \*

"If proper notice is never mailed, the delays never start to run." *Bank of America, N.A. v. Clower*, 24 So.3d 911, 913 (La. App 2 Cir. 9/23/2009), citing *Juengain v. Johnson*, 571 So.2d 167 (La. App. 4 Cir. 1990); and *Guaranty Bank & Trust Co. v. Quad Drilling Corp*., 284 So.2d 349 (La. App. 1 Cir. 1973). Thus Defendant's period in which to seek a new trial or file an appeal had not commenced prior to Defendant's filing its Notice of Appeal on October 12, 2020.

\* \* \*

Although entitled as a "Motion for New Trial," it is clear from the actual pleading that Defendant's Motion for New Trial was really seeking reconsideration of the Appeal Order, and not the September 21, 2020 judgment. "Courts should look through the caption of pleadings in order to ascertain their substance and to do substantial justice to the parties." *9029 Jefferson Hwy, L.L.C. v. S & D Roofing*, 136 So.3d 313, 316 (La. App. 5 Cir. 2/26/2014), *citing Reynolds v. Brown*, 84 So.3d 655, 659 (La. App. 5 Cir. 2011).

\* \* \*

Given the Motion for New Trial was seeking reconsideration of what Defendant believed was a denial of the timely Notice of Appeal, acknowledging the confusion around the Appeal Order issued by this Court, and to ensure fairness to all litigants involved. Defendant is granted leave to file a new Notice of Intent to Appeal within ten days of counsel's receipt of the judgment.

7

pursuant to Rule 2-12.13, this Court may strike, in whole or in part, briefs that do not comply with these Rules.[5]

An appellate court may "consider as abandoned any assignment of error or issue for review that has not been briefed." Uniform Rules, Courts of Appeal, Rule 2-12.4(B)(4)). In addition, an appellate court has the authority to "disregard the argument on assignment of error or issue for review if suitable reference to the specific page numbers of the record is not made." Uniform Rules, Courts of Appeal, Rule 2-12.4(B)(3)).

A review of GI's brief reflects that each of its assigned errors involves whether the city court erred in ordering the award of unpaid wages, vacation pay, penalty wages and attorney fees. While we acknowledge GI's failure to comply with the Uniform Rules in preparation of its' brief, in this case, in the interest of fairness and justice, we will not exercise our discretion to disregard.

## DISCUSSION

GI raises a number of errors, which we summarize as follows: the city court erred by awarding Ms. Gallo past wages and accrued unused vacation pay under La. R.S. 23:631 and penalty wages and attorney fees under La. R.S. 23:632. Specifically, GI argues that it offset or withheld a portion of Ms. Gallo's wages based on four grounds: (a) offset of training costs per contract; (b) offset of three

---

[5] Ms. Gallo specifically asserts the brief is defective in that:

(1) failure to include a table of contents ( La. Unif. R. Ct. App. 2-12.4(1));
(2) failure to include a jurisdictional statement, the date of the judgment appealed to establish the timeliness of the appeal or an assertion that the appeal is from a final appealable judgment (*Id*. at 2-12.4(A)(3));
(3) failure to state the applicable standard of review (*Id*. at 2-12.4(A)(9));
(4) failure to append the judgment to the brief (*Id*. at 2-12.4(B)(1));
(5) failure to specify the page numbers of the record in the brief (*Id*. at 2-12.4(A)(7)); and
(6) failure to reference citations on which the appellant relies (*Id*. at 2-12.4(a)(9)(a)).

(3) days wages for attending training; (c) offset of two (2) days wages for loss of business for Ms. Gallo's failure to return keys; and (d) no payment for vacation accrued leave because none accrued. As grounds one and two are interrelated, we will address them together.

In addition, Ms. Gallo, in her brief to this Court, requests an award of attorney's fees and costs for defending the appeal.

*Applicable Law on LWPA*

The purpose of the LWPA is to compel an employer to pay the employee promptly after the employment is terminated. *Steak v. Hat World, Inc.*, 15-1108, p. 5 (La. App. 4 Cir. 5/4/16), 191 So.3d 712, 715. Under the LWPA, La. R.S. 23:631 provides, in pertinent part:

> (A)(1)(b) Upon the resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday for the pay cycle during which the employee was working at the time of separation or no later than fifteen days following the date of resignation, whichever occurs first.

> B. In the event of a dispute as to the amount due under this Section, the employer shall pay the undisputed portion of the amount due as provided for in Subsection A of this Section. The employee shall have the right to file an action to enforce such a wage claim and proceed pursuant to Code of Civil Procedure Article 2592 [summary proceedings].

La. R.S. 23:634, which is pertinent to an employee/employer contract, provides, in part:

> A. No person, acting either for himself or as an agent or otherwise, shall require any of his employees to sign contracts by which the employees shall forfeit their wages if discharged before the contract is completed or if the employees resign their employment before the contract is completed; but in all such cases the employees shall be entitled to the wages actually earned up to the time of their discharge or resignation.

9

Additionally, La. R.S. 23:632 provides the penalty for failure to pay:

> A. Except as provided for in Subsection B of this Section, any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages.

> B. When the court finds that an employer's dispute over the amount of wages due was in good faith, but the employer is subsequently found by the court to owe the amount in dispute, the employer shall be liable only for the amount of wages in dispute plus judicial interest incurred from the date that the suit is filed. If the court determines that the employer's failure or refusal to pay the amount of wages owed was not in good faith, then the employer shall be subject to the penalty provided for in Subsection A of this Section.

> C. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.

With these principles in mind, we now turn to the merits of the case.

### *Offset for Training Costs*

GI asserts that the city court erred in finding the reimbursement for training costs in the contract between GI and Ms. Gallo was against public policy. In particular, GI claims the city court was errant in its reliance upon the Third Circuit's opinion of *Leprette v RCS, LLC*, 16-382 (La. App. 3 Cir. 11/16/16), 206 So.3d 1215. GI explains that the *Leprette* decision, which held that an employment contract between employer and employee that requires an employee to reimburse its employer for training costs violates public policy, is not binding in this Court. GI argues *Leprette* is contrary to the law of the Fourth Circuit, which states that the contract is the law between the parties. According to GI, "[t]here is nothing

10

abhorrent about an employee reimbursing her employer, who has spent time and money to train the employee."

The city court's conclusion that GI offsetting of the training costs was against public policy is a legal issue. As such, on review, this Court must determine whether the city court correctly interpreted and applied the law. *See City of Baker School Bd. v. East Baton Rouge Parish School Bd.,* 99-2505, p. 2 (La. App. 1 Cir. 2/18/00), 754 So.2d 291, 292 (wherein this Court explained that appellate review of questions of law is simply a review of whether the trial court was legally correct or legally incorrect).

The public policy at stake is whether the reimbursement requested by the employer is an attempt to forfeit the employees' wages, which is prohibited under Louisiana law—La. R.S. 23:634. *Morse v. J. Ray McDermott & Co.*, 344 So.2d 1353, 1359 (La. 1976). Generally, "[t]he employer-employee relationship is a contractual relationship. As such, an employer and employee may negotiate the terms of an employment contract and agree to any terms not prohibited by law or public policy." *Quebedeaux v. Dow Chem. Co.*, 01-2297, pp. 4-5 (La. 6/21/02), 820 So.2d 542, 545. In determining whether the offset of the training expenses was against public policy in this case, and thus invalid, the city court relied on *Newsom v. Global Data Systems, Inc.*, 12-412 (La. App. 3 Cir. 12/12/12), 107 So.3d 781. In *Newsom,* the Third Circuit held that repayment of training costs by the at-will employee[6] was per se against public policy, thus, null and void. Similarly, in *Leprettre v. RCS, LLC*, 16-382 (La. App. 3 Cir. 11/16/16), 206 So.3d 1215, which

---

[6] At-will employment allows either the employee or employer to terminate employment at any time, provided the termination does not violate any statutory or constitutional provision. *See Bains v. Young Men's Christian Ass'n of Greater New Orleans*, 06-1423, p. 9 (La. App. 4 Cir. 10/3/07), 969 So.2d 646, 652 (citation omitted).

11

is cited by GI, the appellate court found that repayment of the training cost by the at-will employee was per se against public policy, thus, null and void.

In this case, unlike *Newsome* and *Leprette,* Ms. Gallo was not an at-will employee; instead, she was employed to a two-year term specified in the contract between Ms. Gallo and GI. Recently, in *Preis, PLC v. Daily*, 19-700 (La. App. 3 Cir. 3/25/20), 297 So.3d 853, the Third Circuit affirmed the trial court's judgment which awarded past wages, penalty wages, and attorney fees to a lawyer who resigned from the law firm before the completion of the employment term as outlined in his employment contract. The employment contract included a clause for stipulated damages if the lawyer terminated his employment before completion of the employment term. On appeal, the law firm argued that the stipulated damages provision at issue was reasonable under the circumstances, not penal in nature, and related to actual damages it sustained. The appellate court disagreed and affirmed the trial court's judgment, writing, in part:

> Provisions in employment contracts that do not expressly state that an employee must forfeit wages upon resignation prior to the term of the contract, but rather require the employee to pay stipulated damages upon resignation, have consistently been held to be de facto forfeiture of wages clauses in violation of La. R.S. 23:634(A), and therefore unenforceable, when the stipulated damages clause does not "reasonably approximate the obligee's loss in the event of a breach."
> *Keiser*, [ *v. Catholic Diocese of Shreveport, Inc.,* 38,797 (La. App. 2 Cir. 8/18/04),] 880 So.2d [230,] at 236.

The appellate circuit concluded that the evidence in the record reasonably supported that the stipulated damages clause did not reflect an attempt by the parties to approximate actual damages in the event the employee resigned prior to the three-year commitment. As a result, the appellate court determined that the stipulated damages provision requiring the employee to pay a certain sum of

money in the event of her early resignation was "a de facto forfeiture of wages clause prohibited by La. R.S. 23:634(A) and unenforceable." *Id.*, 19-700, p. 11, 297 So.3d at 862. Although the issue was stipulated damages, not training costs, the Third Circuit, expanding on its' decision in *Newsome*, wrote:

> We further note our indication in *Newsom*, 107 So.3d 781, that employment contracts requiring an employee to, upon resignation, *reimburse* an employer for training or other benefits that the employer otherwise provided to the employee, when the employer otherwise profited, or benefited, from providing training or other resources to the employee, are unenforceable, as they are unreasonable and against public policy.

*Id.*, 19-700, p. 11, 297 So.3d at 789. The *Preis* Court, agreeing with the trial court that the employer did not suffer any loss of profits and benefited from the employee's employment, concluded the reimbursement by the employee of training costs was against public policy.

Turning to the case *sub judice*, at trial, Dr. Airhia testified that Ms. Gallo was hired as a full time employee for the position of the coordinator to be paid a rate of $20.00 an hour for a forty (40) hour work week. Dr. Airhia read the pertinent provisions of the contract including, "[y]ou agree that if you leave the company (Greenpath International Inc.) before the end of the contracted date of January 30, 2021, you will be held liable and responsible for any monies for training incurred during your employment. . . ." Ms. Gallo did not dispute she owed the training costs of $219.75; in fact, she acknowledged that she owed the training expense in her resignation letter. However, we find inherent in the reimbursement of training costs provision in Ms. Gallo's employment contract a forfeiture of wages clause. As discussed *supra*, GI withheld three (3) days of earned wages from Ms. Gallo's paycheck and labeled it training costs for her employer-required attendance at the Domestic Violence Intervention Program:

Duluth Model training, along with $219.75—the cost of the registration for the training. The record is devoid of any evidence that GI suffered loss of profits due to Ms. Gallo attending the employer-required training program; rather, in GI's line of work, Ms. Gallo's attendance at the Domestic Violence Intervention Program training would have benefited GI.

We conclude the reimbursement of the training costs provision in Ms. Gallo's employment contract was a de facto forfeiture of wages clause in contravention with La. R.S. 23:634 and find the city court did not legally err in finding that the reimbursement clause in the employment contract was against public policy. This assignment of error lacks merit.

### Offset for Loss of Access to Office

GI offset two (2) days of wages, Monday, July 21, 2019 and Tuesday, July 22, 2019, from Ms. Gallo's final paycheck because it was unable to access the probation and parole clients' files locked in her office.

At trial, Dr. Airhia testified that Ms. Gallo notified him, via email, that she was resigning, effective immediately. Dr. Airha stated that when Ms. Gallo left work on July 19, 2019, she took with her the only set of keys to the substance abuse coordinator's office and the cabinet, which housed the confidential federal probation and parole clients' files. Dr. Airhia testified that he did not receive the keys until late Tuesday, following Ms. Gallo's resignation, and GI could not service the federal probation and parole program for two (2) days. As to the impact of not having access to Ms. Gallo's office, Dr. Airhia testified "when [Ms. Gallo] left it was just like a dent, . . . including all kind[s] of monetary loss. . . ." When questioned further, Dr. Airhia could not testify, with specificity, any dollar amount he alleged GI had lost.

14

There is no dispute that when Ms. Gallo left work on July 19, 2019, she took with her the keys to her office. Ms. Gallo stated in her resignation email and at trial that "the company keys . . . . [was] already in the mail to [GI]." However, Ms. Gallo testified emphatically that she did not have the only set of keys to her office; she insisted Dr. Airhia had a master key to the coordinator's office and file cabinet.

The city court was silent as to this issue; however, the city court, in its judgment, did not deduct the two (2) days of wages from Ms. Gallo's pay. It is well settled that "[i]f a trial court's judgment is silent with respect to a claim or issue placed before the court, it is presumed that the court denied the relief requested." *S.E. Auto Dealers Rental Ass'n, Inc. v. EZ Rent to Own, Inc.,* 07-0599, p. 13 (La. App. 4 Cir. 2/27/08), 980 So.2d 89, 99 (citation omitted). Moreover, "[w]hen findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings." *Johnson v. Orleans Par. Sch. Bd.*, 14-0277, p. 8 (La. App. 4 Cir. 4/26/17), 219 So.3d 452, 461-62 (quoting *Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989)).

It is clear from the city court's judgment that the judge rejected Dr. Airhia's testimony that GI could not access the coordinator's office and the federal probation and parole clients' files, and that GI sustained monetary losses as a result of its inability to service the federal probation and parole program. We find no error in the city court's denial of GI's claim of business losses, and we conclude that GI offsetting of two (2) days of wages from Ms. Gallo was not a bona fide dispute. This assignment of error lacks merit.

15

*Accrued Unused Vacation Pay*

GI argues that the city court erred in awarding Ms. Gallo accrued unused vacation pay. GI's vacation policy provides that after a ninety-day probationary period, if an employee works at least thirty-two (32) hours per week, vacation time begins to accrue from the date of hire at a rate of 3.34 hours per pay period.[7] In *Wyatt v. Avoyelles Par. Sch. Bd*., 01-3180, p. 10 (La. 12/4/02), 831 So.2d 906, 914, the Louisiana Supreme Court explained that "[p]ursuant to La. R.S. 23:631(D), vacation pay is 'an amount then due' only if the employee has accrued the right to take vacation time with pay in accordance with the stated vacation policy of the employer."

Dr. Airhia disputes that Ms. Gallo is entitled to vacation pay. Dr. Airhia testified that he hired Ms. Gallo as a full-time, forty (40) hour per week employee. Notwithstanding, he later stated that Ms. Gallo was not eligible for vacation leave, even after her ninety-day introductory period, because she did work at least thirty-two (32) hours per week required to accumulate vacation time. In contrast, Ms. Gallo testified that she worked forty (40) hours per week and earned 3.34 hours per

---

[7] GI's handbook, which contained GI's vacation policy and was admitted into evidence, provides:

> All regular full-time employees receive paid vacation time. Employees become eligible for vacation upon completion of their 90-day introductory period. Vacation time is accrued per anniversary year, beginning on the first day of employment, as follows:
>
> * * *
>
> Full-time General & Administrative Employees Accrual (24 pay periods per year) Years 1 and onward 3.34 hours per pay period, up to 80 hours per year.
>
> * * *
>
> Employees will be paid for unused vacation time that has been accrued through the employee's last day of work upon termination of employment. All vacation payments shall go through payroll subject to normal tax withholdings. To qualify for vacation, the staff must be regular fulltime staff and must work at least 32 hours per week. Request for leave must be submitted to management at least 30 days in advance.

pay period based her accrued unused vacation leave from January 30, 2019 to July 19, 2019. Ms. Gallo testified that she was entitled to $832.20 in vacation leave, and, based on her testimony, the city court awarded Ms. Gallo vacation pay in the amount of $823.20.

As previously noted, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings when findings are based on the credibility of witness. *Johnson*, 14-0277, p. 8, 219 So.3d at 461 (quotations omitted). "[O]nly the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said." *Id.* "Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness." *Id.* "[W]here such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong." *Id.*, 14-0277, p. 8, 219 So.3d at 461-62.

After review of the record, it is clear the city court, again, rejected Dr. Airhia's testimony and accepted Ms. Gallo's testimony—that after her ninety-day probationary period, she worked forty (40) hours per week, thus accruing vacation time from her date of employment until her date of resignation—as more credible. We find the city court was not manifestly erroneous in awarding Ms. Gallo accrued unused vacation pay. This assignment of error is lacks merit.

*Penalty Wages*

GI argues that it tendered the amount of $118.00 to Ms. Gallo—the undisputed portion that was owed to Ms. Gallo per La. R.S. 23:631—in good faith

as Ms. Gallo breached her contract with GI. Thus, the city court erred in awarding Ms. Gallo penalty wages. We disagree.

"To recover penalty wages, an employee must show that 1) wages were due and owing; 2) demand for payment was made at the place where the employee was customarily paid; and 3) the employer did not pay after demand within the time specified by La. R.S. 23:631." *Steak*, 15-1108, p. 6, 191 So.3d at 715 (citations omitted). However, "[i]f a bona fide dispute exists over the amount of wages due, an employer's failure to pay is not an arbitrary refusal and no penalties will be awarded," *Id.*, 15-1108, p. 6, 191 So.3d at 716 (citations omitted). In *Kaplon v. Rimkus Consulting Grp., Inc. of Louisiana*, 09-1275, p. 12 (La. App. 4 Cir. 4/28/10), 39 So.3d 725, 733 (citations omitted), this Court explained that "[b]eing penal in nature, La. R.S. 23:632 must be strictly construed, and its provisions yield to equitable defenses." "A trial court's determination of whether an employer is arbitrary or in bad faith for purposes of imposing penalty wages is a question of fact and is, therefore, subject to the manifest error standard of review." *Id.*, 09-1275, p. 12, 39 So.3d at 733 (citing *Loup v. Louisiana State School for the Deaf*, 98-0329, p. 6 (La. App. 1 Cir. 2/19/99), 729 So.2d 689, 693.

In the case *sub judice*, all three elements were met: (1) past wages and vacation pay are due and owing; (2) a demand was made on GI to pay all unpaid wages, accrued unused vacation pay, attorney fees and costs; and (3) GI did not pay after the demand was made within the time specified by La. R.S. 23:631. Having found that the reimbursement provision in Ms. Gallo's employment contract was against public policy, GI offsetting Ms. Gallo's wages for loss of access to the office was not a bona fide dispute, and unused accrued vacation pay is due and owing to Ms. Gallo, we conclude penalty wages, pursuant to La.

18

R.S.23:632, are appropriate. Thus, the city court did not err in awarding penalty wages. This assignment of error lacks merit.

### *Attorney's Fees*

GI asserts that the district court erred by awarding attorney fees under La. R.S. 23:632(C), which allows the court to tax as cost reasonable attorney fees on a suit for unpaid wages. In *Jeansonne v. Schmolke*, 09-1467, p. 20 (La. App. 4 Cir. 5/19/10), 40 So.3d 347, 362, this Court set forth the applicable law on awarding attorney's fees by the trial court in wage payment cases:

> Unlike penalty wages, the jurisprudence has not recognized equitable defenses to the award of attorney's fees in the event that a "well-founded suit" for wages is filed. *Beard, supra.* A "well-founded suit" is defined as one in which the employee is successful in recovering unpaid wages. *Cleary v. LEC Unwired, L.L.C.,* 00-2532 (La. App. 1 Cir. 12/28/01), 804 So.2d 916. When an employee brings a "well-founded suit," an award of attorney's fees is mandatory. *Id.* Stated otherwise, "[w]hen an employee is forced to file suit to recover his unpaid wages, the award of reasonable attorney's fees is mandatory pursuant to La. R.S. 23:632." *Buras v. Schultz,* 02-0628, p. 3 (La. App. 4 Cir. 9/18/02), 828 So.2d 649, 651.

We conclude the district court did not err in awarding Ms. Gallo attorney's fees. This assignment of error lacks merit.

### *Ms. Gallo's Request for Attorney's Fees on Appeal*

In her brief to this Court, Ms. Gallo requests this Court award attorney's fees for defending the appeal, and appellate court cost, writing:

> Since Judgment was rendered by the Trial Court, Ms. Gallo has incurred $21,900.00 in additional attorneys' fees and costs in the amount of $621.00 related to this suit. Because the Trial Court's judgment should be affirmed, an additional award of attorneys' fees is reasonable in this suit. We thus request the Trial Court's Judgment be amended to award additional attorneys' fees in the amount of $21,900.00 and costs of $621.00.

Without an appeal or an answer to the appeal filed by Ms. Gallo, her request for additional attorney's fees for the appeal cannot be considered. *See Mipro v. Lycée Français de La Nouvelle-Orléans, Inc.*, 13-1604, p. 11 (La. App. 4 Cir. 7/2/14), 146 So.3d 650, 657; *see also Saacks v. Mohawk Carpet Corp.*, 03-0386, p. 26 (La. App. 4 Cir. 8/20/03), 855 So.2d 359, 375-76.

*Court Cost*

Ms. Gallo requests an award for costs incurred for defending the appeal. An award of appellate costs is allowable without filing of an appeal or answer if the appellate court choses. *See Mipro,* 13-1604, p. 12, 146 So.3d at 657; *see also Saacks,* 03-0386, p. 26, 855 So.2d at 376. We elect to grant Ms. Gallo's request for costs incurred for defending GI's appeal.

## CONCLUSION

For the foregoing reasons, the city court's judgment is affirmed. Ms. Gallo's request for GI to pay additional attorney's fees on appeal is denied. Ms. Gallo's request for GI to pay the costs of the appeal is granted.

**AFFIRMED**